GENEVA MINERAL SPRING CO., Limited, v. STEELE et al.

(Supreme Court, Appellate Division, Fourth Department. March 7, 1906.)

1. CORPORATIONS—ACTION TO AVOID CERTIFICATE OF STOCK—EVIDENCE.

In an action by a corporation to determine the ownership of its capital stock, and to declare certain certificates of stock void, evidence *held* insufficient to support the judgment awarding certain shares to defendant.

2. REFERENCE—FINDINGS—EFFECT OF FAILURE TO FIND ON PARTICULAR QUESTIONS.

In an action by a corporation to determine the ownership of its capital stock, to call in certain certificates, and to declare certain of such certificates void, the parties in interest being all before the court, the omission of the referee to find as to the ownership of certain shares was a mistrial as to such shares.

3. EVIDENCE—CORPORATE BOOKS AND RECORDS.

In an action to determine the ownership of shares of corporate stock, it appeared that the company's stock transfer book had been lost, and certain original certificates had been returned and pasted in the stock certificate book, and on the back of each certificate was written a statement, in the handwriting of the president of the company, to the effect that the certificate was one of several assigned to him. *Held*, that such stock certificate book could not be regarded as a stock transfer book, such as was required by statute, and which was made competent evidence by Laws 1875, p. 759, c. 611, § 17.

4. SAME—SELF-SERVING DECLARATIONS.

Indorsements by the president of a corporation on the back of returned certificates of stock, to the effect that such certificates were assigned to him by a third person, such indorsements not having been made in the performance of his duties as an officer of the company, were wholly self-serving, and therefore incompetent.

5. TRIAL—OBJECTIONS TO EVIDENCE.

Where an entire book was offered in evidence, and it contained statements which were inadmissible, it was not necessary that the objection thereto should be specifically made to the inadmissible matter; and, upon objection being made, the offer should have been limited to the portions of the book deemed competent.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 224.]

Appeal from Judgment on Report of Referee.

Action by the Geneva Mineral Spring Company, Limited, against Charles A. Steele and others. From the judgment rendered, Mary E. Coursey, defendant, appeals, and from order refusing to vacate the judgment, plaintiff appeals. Judgment reversed, and order appealed from affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

John Gillette, for appellant Geneva Mineral Spring Co.
Charles A. Hawley, for appellant Coursey.
William S. Moore, for respondents.

NASH, J. The action is brought to determine the ownership of the capital stock of the plaintiff corporation, to call in certain certificates, purporting to be certificates of its capital stock, to declare certain of such certificates void, and that the respective rights of all persons who have or claim to have any of the shares of the capital stock of the plaintiff be determined. The recital of the history of the corporation and its affairs is required to show the necessity for, and the particular purpose of, the action.

In 1885 Stephen Coursey, Andrew J. Eshenour, and Charles A. Steele entered into an agreement by which Coursey leased to himself, Eshenour, and Steele a parcel of land in Geneva, known as "Coursey's Mill Lot," for the purpose of boring for oil, gas, or other mineral. A subscription was opened, and money raised thereby to drill a well. The whole amount subscribed and paid in was $2,425. A contract was made with A. D. Branch, who was on the subscription for $100, to drill the well. They did not find oil or gas, but struck a vein of mineral water. The plaintiff was organized in the year 1886. The certificate of incorporation provided for a capital stock of $3,000; 120 shares of $25 each. Upon the organization no money was paid, but each subscriber to the well was allowed one share of stock for each $25 subscribed to the drilling of the well. The object and nature of the business of the corporation was the bottling and selling and otherwise dispensing of the water from the well. The plaintiff, upon completing its incorporation, took possession of the lands and premises upon which the well was located, made improvements thereon, and engaged in the business for which the company waa organized, managed by Steele as president, and Coursey as treasurer, of the company. The business, not being successful, was abandoned by the company. From December 1, 1886, for some eight years no meetings of the directors of the company were held. The business during that time was conducted by Steele and Coursey; by Steele at first, who was in possession of the property, claiming it and the business as his own; afterward by Coursey, who ousted Steele. After ousting Steele, Coursey and his brother, Thomas Coursey, the owner of one-sixth of the fee of the premises, leased the property, with the privileges and appurtenances, including the spring, spring house, and bath house, to Brooklyn parties at a yearly rental of $6,000. In the year 1894 a meeting of the stockholders of the plaintiff corporation was held, and an election of officers had, and an action was commenced by the company against the Courseys and their lessees to have it adjudged that the plaintiff owned the original lease of 1885 (Coursey to Coursey, Eshenour, and Steele), and that the lease for $6,000 per annum inured to the plaintiff, and for an accounting by Stephen Coursey for the rents received; in which action the plaintiff

had an interlocutory judgment for an accounting by Coursey, and for a receiver to take the rents. The judgment was affirmed, and an accounting was had, which resulted in a judgment against Coursey, the amount of which was reduced, and the judgment finally affirmed by the Court of Appeals in the year 1902. 45 App. Div. 268, 61 N. Y. Supp. 98; 57 App. Div. 620, 67 N. Y. Supp. 1133; 171 N. Y. 664, 64 N. E. 1121. After the determination of that action, in which the existence of the plaintiff as a corporation and its rights in the property were adjudged, this action was commenced to determine for the company who its stockholders really are, so that it will be in a position to divide the moneys on hand and to accrue under the lease.

At the first meeting of the stockholders of the corporation, held October 6, 1886, by-laws were adopted, and Andrew J. Eshenour, Charles A. Steele, Stephen Coursey, Sidney S. Mallory, and Mitchell H. Picot were duly elected as the five directors of the company—the number authorized by the by-laws. On the 11th of October following, the directors met, organized as a board of directors, and elected Charles A. Steele, president, Andrew J. Eshenour, treasurer, and Mitchell H. Picot, secretary of the company. The by-laws provided that certificates of stock should be signed by the president and countersigned by the treasurer. No certificates of stock were issued until May, 1887, when certificates of stock were issued signed by Charles A. Steele, president, and Stephen Coursey as treasurer, upon the request of Steele. Coursey was not treasurer of the company.

The referee finds:

"Fourth. * * * It was determined by the subscribers and incorporators that all the shares of the plaintiff's capital stock should be issued to the persons who had contributed to the expense of drilling said well in proportion to their contributions, except $500 thereof, which it was determined should be sold for the purpose of reimbursing the defendant Coursey for expenses incurred by him in addition to the amount of his subscription.

"Fifth. That accordingly plaintiff's directors and officers by mutual consent, but without the adoption of any formal resolution to that effect by the board of directors, procured a stock certificate book and a stock transfer book, and on or about the 9th day of May, 1887, the defendant Charles A. Steele, who was the duly elected president of the company, and the defendant Stephen Coursey, who was the acting, though not the legally elected, treasurer of the company, made and delivered to the persons who had contributed to the expense of drilling the well, or their transferees, certificates of stock in the plaintiff company in proportion to the amount of which each had contributed, except that they made and executed to the defendant Charles A. Steele certificate No. 29 for 20 shares. That these certificates were all dated October 15, 1886, and no seal was affixed to the certificates; the company having no seal at that time.

"Sixth. That said certificate No. 29, for 20 shares, was issued to the defendant Charles A. Steele, after an unsuccessful attempt to sell the same had been made, for the purpose of using the proceeds to reimburse the defendant Coursey for said expenses incurred by him in drilling the well over and above the amount of his subscription, by the consent of a majority of the directors, and on the agreement of said Charles A. Steele to pay to said Coursey $300 of the moneys so expended by said Coursey, and said Coursey's consent to accept said sum, and that said Charles A. Steele did pay said $300 to said Coursey."

These findings, so far as they relate to certificate No. 29 for 20 shares, issued to the defendant Steele, are challenged by the plain-

tiff corporation as wholly unsupported by the evidence, and that the conclusion of law therefrom that the defendant Steele thereby became the lawful owner of said certificate No. 29 and of the 20 shares of stock is erroneous.

The contention of counsel for the plaintiff is that:

"According to Steele's testimony, his title to these 20 shares depends upon a private arrangement between Messrs. Steele, Coursey, and Eshenour, whereby he (Steele) was to pay $300 to cover expenditures made by him previous to incorporation, and to receive credit for $200 upon his own services. The plaintiff did not assume any obligation to Coursey by vote of the stockholders or directors. Neither was Steele allowed any compensation by vote of stockholders or directors. The former could be done only by vote of a majority of all the stockholders, and the latter by a vote only of two-thirds of the directors, exclusive of Steele."

Mr. Steele, examined as a witness in his own behalf, was permitted to testify that, in addition to what appears in the minutes of the meeting at which the officers of the company were elected by the directors on October 11, 1886, Mr. Coursey came before the meeting, and stated that a 12 per cent. assessment which had been made did not cover all the money expended on the spring, and that—

"There was a resolution offered there to increase the capital stock from $2,500 to $3,000, and make each share $25 issue, and sell $500 more stock to pay Mr. Coursey for moneys he had advanced. He said that the 12 per cent. assessment did not cover it; something like three or four hundred dollars. The resolution was passed."

It may be observed that the original certificate for the formation •of the corporation, signed by Steele, Eshenour, Coursey, Mallory, and Picot, previously made, and which was filed September 18th, provided for a corporation with a capital of $3,000, with 120 shares of $25 each. Steele further says:

"I do not think there was any resolution passed about it; it was general talk. They all wanted me to sell this stock. The matter was brought up or discussed at a directors' meeting November 1, 1886. I reported at the meeting that I had been unable to sell any portion of this stock. Mr. Coursey brought up the matter of wanting his money. I reported that I had made every effort that I knew how to dispose of the stock, and could not get rid of any of it at any price. I said I would pay Mr. Coursey $300 cash if I could raise the money for this stock, and apply the balance on the moneys I had paid out and the work I had done, which was worth more than $200. Mr. Coursey and Mr. Eshenour were the only ones present besides myself; that is, November 1st. Mr. Coursey said and Mr. Eshenour said they wanted me to have this stock. Mr. Coursey said he would be very glad to have his money, and Mr. Eshenour said he would be very glad to have him paid, or words to that effect. November 18th I borrowed the money, and paid Mr. Coursey $300, and took a receipt. I have not that receipt. Q. What was said at that meeting, in addition to what appears in the minutes of the meeting? A. I told Mr. Eshenour that I had paid Mr. Coursey for this stock $300, as proposed November first, and that I thought we ought to get out our stock certificate book, and both Mr. Coursey and Mr. Eshenour told me to have the certificates printed; to get out the book; that a good many people wanted their stock. I was directed to get a stock book printed by Mr. Eshenour and Mr. Coursey. They were present at that meeting. There was no one else present that I know of."

The objections of the plaintiff to the awarding of these shares to the defendant Steele are that the by-laws provided that no director

should receive compensation for performing any special service for which compensation might be allowed, except by a two-thirds vote of the directors, not including his own vote, and that no debt or liability beyond the current expenses of the company should be contracted by the board of directors, or any officer of the company, without the assent of a majority of the stockholders. Furthermore, that it was not shown that Coursey had advanced moneys not covered by the 12 per cent. assessment to the amount of $300 or $400, or any other amount, or that Steele had paid out moneys and had done work for the company worth $200. These were statements merely to that effect made, as Steele says, at a meeting when only three of the directors, including Steele and Coursey, were present. The testimony of Coursey is to the effect that the company was not indebted to him for the $300. His testimony is that Steele paid him the $300 to apply upon an indebtedness of $447 of Steele to Coursey for borrowed moneys; the balance of which ($147) was included in a note given by Steele to Coursey, upon which the latter brought a suit against Steele, in which a recovery was had by Coursey. We think the objections of the plaintiff to the judgment awarding these 20 shares of stock to the defendant Steele are well taken.

The appellant Mary E. Coursey contends that the third conclusion of law of the learned referee is erroneous, both for what it decides and for what it expressly fails to decide. The finding is as follows:

"Third. That the original transfer by Thomas Dunn of certificate No. 12 for two shares, and by Charles A. Baldwin of certificate No. 21 for two shares to Charles A. Steele, were sufficient to vest in said Steele the title to said shares; but whether a right exists in subsequent transferees from said Dunn and Baldwin to recover said shares for failure of said Steele to perform the contract of purchase is not determined."

Dunn held certificate No. 12 for two shares. On May 27, 1887, he assigned it to Steele, and received from Steele a paper, of which the following is a copy:

"$50.                                          Geneva, May 25, 1887.

"One year from date I promise to pay T. Dunn, or bearer, fifty dollars with use for his interest in the Geneva Mineral Springs Company, which he has assigned to me, or refund the assignment to him with the added improvements, without cost to him.                    C. A. Steele."

Steele never paid the $50. Dunn indorsed upon the foregoing paper, the following:

"For value received, I assign all my interest and title to Stephen Coursey in this note in the spring.                    Thos. Dunn."

He also gave to Coursey the following paper:

"$50.                                          Oct. 14, 1890.

"For value received. I hereby sell and assign all my right, title, and interest in the Geneva Mineral Springs to Stephen Coursey of Geneva, N. Y.
                                              "Thos. Dunn."

These papers were delivered to Coursey.

The Baldwin case is precisely similar. He had two shares. Steele gave him a similar paper, which was transferred to Coursey. It would seem that, although, as the referee finds, the conditional transfers of these shares by Dunn and Baldwin were sufficient to vest the title in

·Steele, it went back in default of payment, and passed by assignment to Coursey. In the eleventh finding of fact the Dunn shares are included in the schedule of shares stated to have been transferred to, and now owned and held by, the defendant Charles A. Steele, and the two Baldwin shares are stated in the seventeenth finding to have been transferred to, and are now owned and held by, the defendant Daniel E. Moore. How the latter acquired such ownership does not appear. The judgment follows the conclusion of law as to both the Dunn and Baldwin shares, and as to those "whether a right exists in subsequent transferees from said Dunn and Baldwin to recover said shares for failure of said Steele to perform the contract of purchase is not determined." The parties being all before the court, their rights as to such shares should have been adjudged. The omission is a mistrial as to those shares.

A. D. Branch, the contractor who drilled the well, subscribed $100, and paid his subscription. He was therefore a stockholder, entitled to four shares. There is no specific finding in the report as to the four Branch shares. He had disappeared at the time the corporation was organized. Branch became indebted to Coursey, who sued in justice's court, got an attachment, levied on the stock, and it was sold. ·Coursey bought it. He assigned all of his stock to his wife, Mary E. Coursey. The Branch shares are claimed by the defendant Steele upon evidence given by himself. He testified:

"I bought two of those original Branch shares, and now hold them, I guess. I bought two from Stephen Coursey. How I know I bought the two Branch shares is because I bought half of Coursey's subscription; it was not shares, it was subscription. Of those subscriptions which Coursey and I got out. Mr. Coursey had one, Mr. Eshenour had one, and I had two, representing Branch's subscription to the well; that is, when Coursey and I got out these ·certificates, I got out a certificate of six shares to Charles A. Steele, two of which represented the Branch subscription to the well. I bought these two from Mr. Stephen Coursey. The evidence I had of Stephen Coursey's right or title to the Branch subscription, or any part of it, was that he made a levy ·on his property, and included that, and it was sold to me, and I paid for it."

Mr. Steele also testified as follows regarding the Branch shares:

"Mr. Coursey bought Mr. Marshall's certificate of stock for two shares and ·subscription, and levied on A. D. Branch's property and subscription. He sold Mr. Branch's subscription—two shares—to me, one to Mr. Eshenour, and kept one himself. He was an original subscriber for four shares, and the two shares he bought of Mr. Marshall early in 1886, and one from Mr. Branch, ·made him seven shares."

The case shows that Mr. Coursey put in $75 in addition to his original well subscription of $100, which entitled him to the original seven shares of stock, represented by his original certificate of stock, and ·therefore could not have included any of the Branch stock. There is no specific finding in the report from which it can be determined to whom the Branch shares have been allotted by the judgment.

The appellant Mary E. Coursey contends that 26 shares of stock, the title to which she claims by assignment from her husband, Stephen ·Coursey, were erroneously allotted to the defendant Steele as assignee of Coursey. Coursey claimed that these 26 shares had never been assigned to Steele. Steele claimed them by a lost assignment. The ·question involves five certificates, originally issued as follows: No. 8,

to Phillips & Clark, 4 shares; No. 17, to E. J. Rogers, 1 share; No. 26, to A. J. Eshenour, 8 shares; No. 27, to Coursey. 7 shares; No. 33, to H. M. Picot, 6 shares. These certificates, returned for cancellation, and new certificates were pasted to the stubs in a stock certificate book, each of which is regularly assigned by written assignment, signed by the original holder, indorsed on the back to Stephen Coursey, except the certificate originally issued to Coursey for seven shares, on which no assignment is indorsed. The company's stock transfer book had been lost, and a new one, made by Steele from his recollection of the contents of the other, was offered in evidence and excluded. On the back of each of the originals of these five certificates in question, returned and pasted in the stock certificate book, there appears a written statement, in the handwriting of Steele, to the effect that the certificate is one of 26 shares of stock assigned by Coursey to Steele. On certificate No. 27 to Coursey (seven shares), on which there is no assignment indorsed, this writing of Steele is as follows:

"This stock, represented by the within certificate No. 27 for seven shares, is included in the twenty-six shares stock sold and delivered and transferred to C. A. Steele on October 8, 1887, by Stephen Coursey, on Stock Transfer Book No. 1.                                        C. A. Steele."

On certificate No. 26, to A. J. Eshenour, there is a transfer to Coursey as follows:

"For value received, I do hereby constitute and appoint S. Coursey true and lawful attorney for me and in my name to transfer to Stephen Coursey eight°shares of the capital stock of the Geneva Mineral Springs Co., Limited. "Done at Geneva, this 26th day of March, A. D., 1887.
                                        "A. J. Eshenour.    [Seal.]"

Steele's memorandum:

"This stock, represented by the within certificate No. 26 for eight shares, is included in the 26 shares stock sold and delivered and transferred to C. A. Steele on October 8, 1887, by Stephen Coursey on Stock Transfer Book No. 1.
                                        "C. A. Steele."

And to the same effect are the memoranda indorsed on the certificate No. 33, to H. M. Picot, 6 shares; No. 17, to E. J. Rogers, 1 share; No. 8, to Phillips & Clark, 4 shares. The stock transfer book designated by Steele in these memoranda as "Stock Transfer Book No. 1" refers to the lost stock transfer book. Notations were also made in the handwriting of Steele on the stubs to which the certificates were pasted of the assignments of the several certificates by Coursey to Steele. This book of returned original certificates, including the statements indorsed upon the certificates by Steele and the notations on the stubs—the entire book—was offered in evidence in Steele's behalf, to which objection was made by counsel in behalf of Mrs. Coursey, and also by counsel in behalf of the plaintiff. The ruling and exceptions were as follows:

"By the Referee: The legal effect of any indorsement which Mr. Steele may have made in his own behalf will be received for disposition at the proper time. Book and all memoranda received. Exceptions taken."

The record does not show any further disposition of the question as to the admission in evidence of the writings of Steele on the certificates or on the stubs. They stand as evidence in the case.

The stock certificate book cannot be regarded as a stock transfer book, such as was required by the statute under which the plaintiff was incorporated to be kept, and which was made competent evidence in any suit or proceeding against a stockholder. Chapter 611, p. 759, Laws 1875, § 17. Especially the statement on the back of the several certificates:

"This stock [Eshenour], represented by the within certificate No. 26 for eight shares, is included in the 26 shares stock sold and delivered and transferred to C. A. Steele on October 8, 1887, by Stephen Coursey on Stock Transfer Book No. 1.                                                             C. A. Steele."

These writings, indorsed by Steele upon the returned certificates, must be regarded as having been made by him for his own benefit, not in the performance of his duties as an officer of the company, wholly self-serving, and therefore incompetent as evidence in the case for any purpose. The evidence was of the greatest importance upon the question at issue.

It is suggested that objection was not specifically made to these indorsements upon the certificates. The entire certificate book was offered and objected to. The book contained the objectionable statements upon the certificates, and was therefore, as a whole, incompetent. Upon objection being made, the offer should have been limited to the portions of the book deemed competent. If the objection had been sustained, a specific offer would have been required to make it effective. The book was an official record only of the certificates returned and canceled. The memoranda upon the stubs formed no part of a stock transfer book required to be kept by the statute. That book had been lost, and the new one, made by Steele from memory, offered in evidence was excluded. These memoranda upon the stubs were not competent as evidence; they were not made so by the statute. The notations of transfers on the stubs of the certificates were unnecessary. The stubs of the new certificates would show to whom the new certificates were issued.

We conclude that a new trial should be granted upon the grounds appearing in the discussion which has been had, without passing upon other questions in the case discussed by counsel, which may not arise upon a new trial. The granting of a new trial makes it unnecessary to discuss the question raised by the appeal of the plaintiff from the order of the Special Term denying the motion to vacate the judgment.

Judgment reversed, and new trial granted, with costs against defendant Steele to the appellants, plaintiff corporation and Mary E. Coursey, to abide the event. Order appealed from affirmed. All concur.