## JOHN G. COOPER V. VIRGINIA BOWER.

No. 15,559. ( 96 Pac. 59.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Mutuality of a Marriage Contract—Self-serving Declarations.* Where in an action for damages for breach of promise to marry the defendant has introduced evidence intended to prove that the plaintiff, during the time the engagement is claimed to have existed, declared to others that she would not marry the defendant, it is not error to permit the plaintiff to give evidence of her declarations during that period of her being engaged to marry him, for the purpose of showing the mutuality of the contract.

2. ———— *Same.* In such a case declarations of the plaintiff to other persons with regard to the conduct of the defendant with respect to his agreement to marry her are not admissible.

3. ———— *Objection to Incompetent Question Overruled—Exception Not Waived.* When an incompetent question has been objected to, and an exception has been taken to the overruling of it, it is not necessary for the objecting party, in order to have the benefit of the exception, to renew his objection where in response to a suggestion from the witness as to the manner of his answer the examiner tells him to proceed in his own way.

4. MARRIAGE CONTRACT—*Consideration.* The evidence examined and held not to show conclusively that the contract relied upon by the plaintiff was based upon an unlawful consideration.

5. ———— *Promise Made before Divorce Becomes Absolute.* Notwithstanding the language of the statute (Gen. Stat. 1901, § 5142) that every decree of divorce shall recite that it does not become absolute and take effect until the expiration of six months from its date, a party to a divorce proceeding may within six months from the time a decree is rendered make a valid contract to marry after the lapse of that interval, the provision referred to having been interpreted as a mere restriction upon marriage within that time.

6. ———— *Denial of Promise—Action for Breach before Divorce Becomes Absolute.* Where in an action for damages for breach of promise of marriage the principal contention of the defendant is that he never made such a promise, and the evidence conclusively shows that if an engagement to marry ever existed it had been utterly repudiated by the defendant,

he is not in a position to claim that the action was prematurely brought by reason of its having been begun within six months from the time a divorce had been granted to him.

Error from Shawnee district court; ALSTON W. DANA, judge.    Opinion filed May 9, 1908.    Reversed. Opinion denying a petition for a rehearing filed July 3, 1908.

*J. B. Larimer, Charles F. Spencer,* and *D. H. Branaman,* for plaintiff in error.

*A. M. Harvey, John V. Abrahams,* and *F. S. Jackson,* for defendant in error.

The opinion of the court was delivered by

MASON, J.:  Virginia Bower recovered judgment against John G. Cooper for $4000 in an action for breach of promise of marriage, and the defendant prosecutes error.

One of the principal contentions of the defendant is that the trial court erred in overruling an objection to this question, asked with respect to a conversation, had before the action was begun, between the witness and the plaintiff:

"I will ask you to state to the jury what, if anything, she said about any agreement or understanding that she had with Mr. Cooper to marry, and his conduct in relation thereto?"

A part of the answer was as follows:

" 'Well,' she says, 'I believed Mr. Cooper and trusted him, and I find he is trying to go back on me.   .   .   . We were engaged to be married—he agreed to marry me as soon as the six months was up, and I heard over the telephone where he was fooling with another woman; got stuck on another woman.   He told her as soon as he got me out she would move right in.' "

The admission of this evidence is sought to be justified upon the authority of a line of decisions holding that under some circumstances in a breach of promise action the plaintiff may give evidence of her own dec-

larations, made during the existence of the engagement, for the purpose of showing the mutuality of the contract—that the plaintiff as well as the defendant had consented to it. The cases are not in harmony, and it is difficult to deduce a general rule from them. They are collected in volume 5 of the Cyclopedia of Law and Procedure, at page 1012, notes 5, 6, 7, 8, 10 and 11, and volume 3 of Wigmore on Evidence, section 1770, notes 2 and 3. Additional cases are *State v. Sortviet,* 100 Minn. 12, 110 N. W. 1001, *Lewis v. Tapman,* 90 Md. 294, 45 Atl. 459, 47 L. R. A. 385.

Declarations by the plaintiff of the existence of the agreement to marry have been held to be admissible, not as proof of the contract, but as affecting the measure of damages by showing additional humiliation to the plaintiff. (*Reed v. Clark,* 47 Cal. 194; *Liebrandt v. Sorg,* 133 Cal. 571, 65 Pac. 1098.) The present case seems to be one in which the declarations of the plaintiff of the fact of her engagement to the defendant might be competent as tending to show her own consent to it, for this reason: the defendant produced several witnesses who testified in substance that the plaintiff had said she would not marry any one, although she had an offer to marry a rich man. And where it is permissible to show that the plaintiff had said she had agreed to marry the defendant it can hardly be a ground of serious objection that her incidental reference to the defendant's promise to marry her is also admitted, since that would be a natural if not necessary accompaniment to the agreement on her part. But the question objected to went beyond this. It called for the plaintiff's narration of the defendant's conduct in the matter. This portion of the question was incompetent on any theory, and the answer to it was manifestly prejudicial, as tending to arouse feeling against the defendant. Its admission therefore requires a reversal of the judgment unless the error was waived or cured. When the question quoted was asked the defendant objected to it as incompetent. The ob-

Cooper v. Bower.

jection was overruled, and the defendant excepted. The witness then said, "I could state that better if I would state it just as it occurred, in my own way." The plaintiff's attorney responded, "Very well." The witness then gave the answer already referred to. The plaintiff's counsel maintain that the words "very well" are to be regarded as constituting a new question, or a repetition of the former question, and that as no objection was interposed between it and the answer the objection previously made must be considered to have been abandoned. To hold this would be to exact unreasonable pertinacity of counsel conducting a trial. The objection to the inquiry had been once made and ruled upon. The suggestion of the witness and the reply of the attorney did not change the situation, and there was no occasion for a renewal of the objection or for its restatement.

It is also contended that the defendant waived the error (1) by bringing out the same matter upon cross-examination of the witness and by cross-examining upon matters not referred to in the examination in chief, (2) by permitting evidence of a similar character to be given by another witness without objection, and (3) by not moving to strike out the objectionable part of the answer or asking an instruction to the jury to disregard it. Of these contentions it may be said in order: (1) The evidence having been admitted over a proper objection the defendant was entitled to cross-examine upon it without waiving the exception, although in doing so the objectionable testimony was repeated; and so far as the cross-examination went outside of the examination in chief it did not relate to the matter objected to in the direct examination; indeed, the two conditions would seem to be incompatible. (2) The testimony of the other witness concerned an entirely different conversation, and the declarations of the plaintiff which it covered related only to the agreement to marry—not to the defendant's conduct. (3) So far as the answer was responsive it was not neces-

sary to move to strike it out or to ask an instruction to disregard it in order to preserve the benefit of the objection to the question; the portion of the answer which has been quoted and discussed was responsive; the answer did include volunteered statements of the witness on other subjects, but their presence, although not objected to, did not affect the matter under consideration one way or the other.

The trial court gave an instruction as follows:

"Certain witnesses have testified to declarations made by plaintiff prior to the time when the contract is alleged to have been broken tending to prove a promise or consent on the part of plaintiff to marry the defendant. These declarations are competent and may be considered by the jury to show the mutuality of the contract."

This instruction did not cure the error, for it did not in terms or by implication withdraw from the consideration of the jury the testimony regarding the plaintiff's declaration concerning the defendant's conduct.

A second assignment of error is based upon the contention that the plaintiff was precluded from recovery by the fact that her own testimony showed affirmatively and conclusively that the promise to marry upon which she relied, if given at all, was made in consideration of her consent to future illicit intercourse. No question is involved as to the general law on the subject, for the court properly instructed that under such circumstances no recovery could be had. The only controversy is with regard to the fact. To determine this it is necessary to state a part of the evidence in some detail. The plaintiff testified that she became acquainted with the defendant through doing housework for him while he was living with his second wife, from whom he was subsequently divorced; that after the divorce was granted, December 26, 1905, he visited her several times at the place where she was working; that during these visits they discussed a plan for her to keep house for him; that he told her he would like

to have her for his wife and for her to come to his house and keep house for him until the six months from the date of the divorce were up; that he did n't want her to work any longer after he had made arrangements to get married; that on January 26, 1906, she went to his place, after which the question of marriage was talked between them about every day. Her examination in chief then proceeded as follows:

"Ques. What was finally agreed upon between you and Mr. Cooper? Ans. After I was there—

"The court: What was said?

"Plaintiff's attorney: Between you and Mr. Cooper concerning the matter of getting married, after you went there? Ans. After I was there about two weeks, then he told me he would like to have me be mutual with him; that he wanted me to have intercourse with him so that he could be true to me; he said he could not wait six months.

"Q. What was said about the question of getting married? A. He said that just as soon as the six months was up, the 27th of June, we were to be married.

"Q. And what did you say? A. I consented.

"Q. And agreed to it? A. Yes, sir.

"Q. State, after that, what the facts were about whether you did have intercourse with him. A. Yes, sir.

"Q. At different times there at his house? A. Yes, sir."

According to her statement these relations continued until May 26, when Cooper asked her to sign several receipts—which she retained and which were introduced in evidence—and upon her refusal ordered her out of the house and told her he did not intend to carry out his contract. One of the receipts read as follows:

"TOPEKA, KAN., May 26, 1906.

"Received of John G. Cooper two dollars, it being the balance due me for work, labor and other demands physically, mentally and sexually.

———————————————"

Her testimony upon cross-examination was in part as follows:

"Ques. You say in this petition that this contract was made to get married on or about the 10th day of February? Ans. We talked more about it then.

"Q. Is that true now, or is n't it true? A. It is true in one sense of the word, because that is when he asked me about that time to be sexually mated with him; to be mutual with him.

"Q. Did he tell you—did you refuse to do that at first? A. I did until he said he wanted to be true to me and that. he could not wait until the six months were up.

"Q. That he would marry you if you would do that? A. That just as soon as the six months were up we would be married then.

"Q. If you would have sexual intercourse with him he would marry you at the end of the six months; that is what he said? A. Yes, sir.

"Q. And then you did have sexual intercourse with him? A. Yes, sir. ·

"Q. In response to that promise? A. Yes, sir.

"Q. Now, that arrangement was satisfactory to you, was it? A. Yes.

"Q. Now, this was on February 10? A. It was some time near that date, about two weeks after I went there; maybe a little later. It might have been a week later, I don't remember the date."

The testimony quoted seems to establish that the express contract there referred to was based upon an unlawful consideration, and to point to that specific contract as the one upon which the plaintiff relied. We do not discover that so far as relates to this particular transaction the plaintiff's admission was ever withdrawn or explained away. However, there was other evidence sufficient to support a finding that an offer to marry had been made and accepted before the plaintiff became the defendant's housekeeper. The defendant's counsel claim that the plaintiff must recover if at all upon the contract made after that event, because in the petition and in the instructions the agreement relied upon is described as having been made on or about

the 10th day of February.    Of course the exact time
of the promise is not material, but there was a tend-
ency throughout the trial to use the date named—the
10th of February—to identify the agreement said to
have been reached after the plaintiff moved to the de-
fendant's house.    It can not be presumed, however,
that the trial court so used it in his charge to the jury.
There having been some evidence that an agreement
to marry had been arrived at before the matter of
illicit intercourse was mentioned between the parties,
there was room for the jury to find the existence of a
valid contract.

A further claim is made that no recovery should
have been allowed because the alleged promise to marry
was given, and the action for its breach was begun,
before the expiration of six months from the date of
the defendant's divorce.    The statute (Gen. Stat. 1901,
§ 5142) provides that every decree of divorce shall re-
cite that it does not become absolute and take effect
until the expiration of six months from its date.    This
provision, however, has been interpreted as a mere re-
striction upon marriage within that time.    (*Durland v.
Durland*, 67 Kan. 734, 74 Pac. 274, 63 L. R. A. 959.)
Upon the rendition of a decree of divorce the parties
cease to be husband and wife.    Neither may lawfully
marry again within six months, but either may during
that period make a legal contract to marry after its
expiration.    The petition in this case was filed June 8,
1906, not only before the arrival of the time agreed
upon for the performance of the alleged contract but
before the defendant could lawfully have performed it.
The evidence, however, was complete and undisputed
that if the defendant had ever promised to marry the
plaintiff he had absolutely repudiated the promise.
His principal contention throughout the proceeding
has been that he never made such an engagement.    He
is not in a position to insist that the action was prema-
turely brought.

Cooper v. Bower.

The trial court gave an instruction correctly stating the general rule as to conditions under which punitive damages may be allowed in breach-of-promise cases. The defendant maintains that under the evidence there was no opportunity for the application of such rule, and that the conduct of the plaintiff as shown by her own testimony was such as to forfeit any claim to other than compensatory damages. This, however, was a question for the jury to determine.

Other assignments of error are not thought to require discussion. The judgment is reversed, with directions to grant a new trial.

---

OPINION DENYING A PETITION FOR A REHEARING.

(96 Pac. 794.)

SYLLABUS BY THE COURT.

1. EVIDENCE — *Form of Objections — Self-serving Declarations.* Where a witness is asked what a party, in whose behalf he is called and examined, had said about the subject-matter of the litigation, an objection to the question on the ground that a self-serving declaration is thereby called for is sufficiently indicated by the use of the term "incompetent"; and the addition of the words "irrelevant and immaterial" do not so far detract from its force as to render it unavailing on review.

2. —————— *General Objection, on Oral Examination, to Testimony in Part Admissible.* The rule that a general objection to evidence will not avail when any portion thereof is admissible does not apply without modification to an objection, made in the course of the oral examination of a witness, to a question which includes several different propositions, a part of which are not subject to the objection. Ordinarily it is incumbent upon the examiner to frame his question so that in its entirety it is free from the objection made; otherwise the objection should be sustained.

The opinion of the court was delivered by:

MASON, J.: A reversal of the judgment in this case was ordered on account of the admission of incompetent testimony. A petition for a rehearing forcibly

presents the contention that no sufficient objection was made to the evidence complained of. The question asked was, substantially, What did the plaintiff say about any agreement or understanding that she had with the defendant to marry, and his conduct in relation thereto? This was objected to as "incompetent, irrelevant, and immaterial." The first criticism of the objection is that it did not distinctly apprise the court and opposing counsel of the reasons for claiming the evidence asked was inadmissible. The words "irrelevant and immaterial" of course added nothing to the force of the objection, but they did not nullify it if it was otherwise good, although so far as they may be deemed to have had any effect whatever they weakened it by tending to distract attention from the real point at issue. The mere term "incompetent," when urged against proffered evidence, has sometimes been said to be too general to challenge the consideration of the court. (9 Encycl. of Ev. 71, 73; Encyc. Pl. & Pr. 226-228; 46 Cent. Dig. c. 954.) Its use in Kansas, however, has been too generally countenanced to warrant this court in going that far, although definiteness in such matters is to be encouraged and the specific reasons that are relied on as grounds of incompetency ought always to be stated. Where such reasons are not readily apparent it may be that the general objection should be held unavailing. But in the present instance the question called for the statement of one of the parties made out of court concerning the very matter in controversy—such a statement as would ordinarily amount to a self-serving declaration. It required no specification to advise the court why the opponent regarded such evidence as incompetent—it was rather for the proponent to suggest the special considerations that were thought to make it competent.

A more difficult proposition is presented by a further contention that, as a part of the conversation called for by the question was competent, it was incumbent upon

the defendant to direct his objection specifically to that part of the question which called for inadmissible testimony. The usual expression given to a familiar and well-settled rule is that "objections to evidence must point out the particular part of the evidence which is objected to. If any part of the evidence is admissible, a general objection is not available and may be overruled." (8 Encyc. Pl. & Pr. 217.) Many cases to that effect are cited in notes to the text quoted. Others are to be found in volume 9 of the Encyclopedia of Evidence, at page 126, and in volume 46 of the American Digest, Century edition, cc. 986-990, under "Trial," and under the same classification in every subsequent issue of the Annual Digest. But in nearly all these cases the evidence objected to was in writing and was offered in mass or the question arose upon a motion to strike out something which had already been admitted. Outside of Alabama, in only a few exceptional instances has the rule been applied to interrogatories put to a witness in the ordinary course of an oral examination. There such an application has been frequently made. Recent illustrations are to be found in *Woodstock Iron Works v. Stockdale,* 143 Ala. 550, 39 South. 335, and *Cofer v. Scroggins,* 98 Ala. 342, 13 South. 115, 39 Am. St. Rep. 54, where the questions asked were, respectively, "Was your wife sick during this summer or fall, and, if so, what in your opinion as a physician caused this sickness, and did you suffer any mental anxiety on this account?" (p. 551) and "State whether or not you were a resident of this county and state and whether you intended to remain so in December, 1888." (Page 343.) A similar application of the rule was made in *Kanne v. Minneapolis & St. Louis Ry. Co.,* 30 Minn. 423, 15 N. W. 871, but, so far as the opinion discloses, solely upon the authority of *Day v. Roth,* 18 N. Y. 448, where the evidence offered was documentary. In *Western Union Telegraph Co. v. Church,* 3 Neb. (unofficial)

Cooper v. Bower.

22, 90 N. W. 878, 57 L. R: A. 905, a commissioner's de-
cision, it was said:

"The rule is elementary, and based upon sound rea-
son, that objection made to a question is properly over-
ruled, unless the objection is good as against the entire
question." (Page 28.)

But the only authority cited in support of the state-
ment is *Schulze v. Jalonick,* 18 Tex. Civ. App. 296, 44
S. W. 580, which in turn follows *G., H. & S. A. Ry. Co.
v. Gormley,* 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep.
894. These Texas cases say that where a part of testi-
mony, objected to as a whole, is admissible, it is not
error to overrule the objection, but the opinions do not
disclose whether the objection was made to a question.
In *People·v. Rose,* 59 N. Y. Supr. Ct. 33, a witness was
asked, "Were you arrested and convicted at Clintondale
for an offense or crime?" (Syllabus.) It was held that
it was proper to ask him if he had been convicted of
crime, but not proper to ask him if he had been ar-
rested, and that an objection to have been sufficient
should have been directed to a part of the question
only, not to the whole. Manifestly, however, the ques-
tion was neither double nor objectionable, for it was
not whether he had been arrested *or* convicted, but
whether he had been arrested *and* convicted; it re-
quired no answer regarding the arrest, unless it had
been followed by a conviction, although the witness
volunteered one.

These, of course, are not all of the cases of this char-
acter, but they are typical. Such cases all seem to pro-
ceed upon the assumption that the general rule in re-
gard to objections to evidence offered in mass applies
with equal force where a question asked of a witness is
in part competent and in part otherwise. In no in-
stance, so far as we discover, where such an applica-
tion has been made has the distinction suggested been
discussed. And yet it is obvious that there are good
grounds for such a distinction. Where written evi-

dence is offered the opposing counsel has the opportunity upon careful examination to see the precise scope and effect of every part of it. The same situation in this regard is presented where evidence has been admitted and a motion is made to exclude it. Under such circumstances no hardship can ordinarily result from requiring the objector to point out the particular portion that is vulnerable. If any considerable portion is good, a general challenge directed to the whole accomplishes nothing. But one of the very purposes of requiring testimony to be given by questions and answers is that objections may be made and passed upon as to each of them separately. When the oral examination of a witness is in progress it is the duty of the examiner so to frame his questions that each shall involve but one single, simple proposition. He is not entitled to put any inquiry that is not wholly competent. If he joins to an admissible question one of a different character he has no cause of complaint if both are rejected.

"If *several facts* are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts." (1 Wig. Ev. § 17, par. *b*.)

In *Sodusky et al. v. McGee,* 28 Ky. *621, it was said:

"The question must be considered in the form in which the party chose to propound it. Although it is disjunctive and divisible, it was not the duty of the circuit court to modify òr dismember it, and then direct the witness to answer it as remodeled; nor was it the duty of the witness to answer a part of it which was proper, and refuse to respond to so much only as was irrelevant. If it was a pertinent and proper question, as presented, it ought to have been answered; but if, as proposed, it was as an unit, irrelevant altogether or only in part, the court ought to have sustained the objection to it." (Page *623.)

A portion of the syllabus reads: "If the question propounded be in part relevant, and in part not, ob-

jection to answer should be sustained." In *Carroll's Lessee v. The Granite Manufacturing Company,* 11 Md. 399, the court said:

"The court, when called on to determine the legality of a question propounded to a witness under oral examination, must decide upon it in its entirety. The obligation rests upon the counsel propounding the question to show that it is free from legal objection, and the onus does not rest either upon the court or the party objecting to separate that part of it which may be legal from that which is illegal.

"After evidence has been admitted, and an application is made to the court to exclude it, then the onus rests upon the party making the application to confine his objection to that portion of the evidence which is illegal. And the same rule applies when an offer is made of a mass of evidence, complex in its character, and the whole of it is objected to. In such case, if any part of it be admissible, it is error to exclude the whole." (Page 408.)

A portion of the syllabus reads:

"A court, when called on to determine the legality of a question propounded to a witness under oral examination, must decide upon it in *its entirety,* and if *any part* of the question is illegal the *whole* must be overruled."

The force of these utterances as decisions is impaired by the fact that in each instance the trial court sustained the objection made; but as they are only advisory, and valuable for the reasoning by which they are supported, this consideration affects their persuasiveness but little. We think the distinction suggested is sound. The rule regulating objections to evidence offered in mass should not be applied without modification to those made to ordinary questions. as they are asked of the witness. If the opposing attorney is required to separate a compound question into its component parts the court must then do what ought not to be required of it—rule upon an inquiry which counsel has not presented—in effect, remodel the question which .

it is the province of the attorney to frame. Of course there may be special situations in which the rule would apply to questions as well as to answers. This would doubtless be true where from necessity a question must be complicated and involve a number of minor propositions, as in the case of a hypothetical question covering a wide range of facts. If such a question is properly constructed in its general scope, doubtless any objection running to a particular portion should be specifically pointed out, for there the proponent has no opportunity to divide it.

Here the question objected to was not made up of two independent inquiries. It called for what the plaintiff had said to the witness during a particular conversation about an agreement with the defendant to marry, and his conduct in relation thereto. By reason of the fact that a claim had been made by the defendant that the plaintiff had not been willing to marry him this court thought it might have been permissible to show the contrary by her declarations made during the time the engagement was alleged to have existed, and therefore that a part of the question might have been competent. This phase of the matter was not very distinctly presented by the question—certainly not as a separate proposition. The defendant's attorney objected to the question in its entirety; and as a whole and in each of its parts it was manifestly open to the objection made, except as the special consideration noted may have rendered admissible so much of it as called for a statement of the plaintiff's willingness to marry the defendant. Under such circumstances the objection must be deemed to have been sufficient. In *Lipscomb v. State,* 75 Miss. 559, 23 South. 210, where the court applied the ordinary rule to a dying declaration, the opinion as published in 23 South., at page 210, contained this language, which, however, was omitted from the official report:

"While objections should be put upon specific grounds, and, in cases where a part be admissible and

a part not, the objection should be specific, yet if an objection be made to the whole of a statement upon a specific ground, as to its relevancy or competency, it will be applied, not only to the whole statement, but to any part of it which may be obnoxious to the rule of evidence invoked by the objection. For instance, if a statement be objected to upon the ground that it is an opinion, it is good as to the whole or any part of it which may appear to be an opinion. The rule which requires fairness to the court in stating objections requires also fairness by the court in determining them, and it would be absurd for a court to hold that an objection to a statement, on the ground that it was an opinion, could not reach its parts. Of course, if the different parts are objectionable upon different grounds, then they should be specified."

In *Geneva Mineral Spring Co. v. Steele*, 97 N. Y. Supp. 996, 1003, the court refused to apply the general rule under circumstances indicated by this excerpt from the opinion:

"It is suggested that objection was not specifically made to these indorsements upon the certificates. The entire certificate book was offered and objected to. The book contained the objectionable statements upon the certificates, and was therefore, as a whole, incompetent. Upon objection being made, the offer should have been limited to the portions of the book deemed competent. If the objection had been sustained, a specific offer would have been required to make it effective." (Page 1003.)

In *Farleigh et al. v. Kelley*, 28 Mont. 421, 72 Pac. 756, 63 L. R. A. 319, it was said:

"The evidence was offered *en masse*—the offer was an entirety. . . . So long, then, as the offer included evidence incompetent, coupled with that which may have been competent, the court committed no error in excluding the offer in its entirety. It was not the duty of the court to separate the competent from the incompetent matter, and admit the one and exclude the other. It properly passed upon the offer as made, and was not required to do for counsel that which he should have done for himself." (Page 434.)

That the error in the admission of the evidence com-
plained of was prejudicial is rendered more evident
by the fact that the plaintiff narrowly escaped destroy-
ing her whole case by her own testimony. As stated
in the original opinion, her admissions on the stand
were fatal to a recovery so far as related to the specific
transactions upon which she seemed to rely. The jury
must have based the verdict upon evidence that came
into the case almost incidentally, preliminary to that
chiefly relied upon. The merits being so doubtful, the
presumption is the greater that the evidence errone-
ously admitted actually influenced the result of the
trial.

The petition for a rehearing is denied.