S. H. DURLAND v. STANLEY DURLAND, *as Adminis-trator, etc.*

No. 13,222    (74 Pac. 274.)

SYLLABUS BY THE COURT.

1. MARRIAGE AND DIVORCE—*Power of Legislature.* Under the provisions of section 18, article 2, of the constitution, vesting the power to grant divorces in the district courts, subject to regulation by law, the legislature may forbid divorced persons to marry within six months of the date of the decree, and may require the decree to recite the day and date of its rendition and that it does not become absolute and take effect until the expiration of six months from such date.

2. —— *Effect of Death of Wife During the Six Months.* If, pursuant to a decree of divorce adjusting property rights, the divorced husband pay money to his former wife within six months from the date of the judgment, the title to such money passes absolutely to her and could not be reclaimed by him from the administrator of her estate should she die within six months from the date of the decree with the money in her possession.

3. —— *Decree Ends Relation of Husband and Wife—Descents and Distributions.* Upon the rendition of a decree of divorce the relation of husband and wife no longer exists between the parties to the suit, and if one of them should die within six months following the date of the decree the survivor would take no share of the property of the deceased under the statute of descents and distributions, by virtue of the former relationship.

Error from McPherson district court; M. P. SIMP-SON, judge. Opinion filed November 7, 1903. Affirmed.

*John D. Milliken*, and *P. J. Galle*, for plaintiff in error.

*Frank O. Johnson*, and *W. D. Schoch* and *F. G. Drenning*, as *amici curiæ*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: S. H. Durland and Debbie Durland were married October 2, 1870. On June 22, 1901, the district court of McPherson county rendered a de-

cree divorcing them.   They made an amicable adjust-
ment of their property-rights and the court adopted
their agreement in that respect as a part of its judg-
ment.    In this manner S. H. Durland became obliga-
ted to pay to Debbie Durland the sum of $2000 in
money within a stated period of time.   The journal
entry of judgment contained the following provision,
placed there to comply with section 8, chapter 107,
Laws of 1889 (Gen. Stat. 1901, § 5142) :

"This decree was rendered Saturday, June 22, 1901,
and does not become absolute and take effect until the
expiration of six months from said date."

No notice of appeal from this judgment was filed by
either party.   Prior to September 2, 1901, S. H. Dur-
land paid to Debbie Durland the full sum of $2000
required of him.   On that day she died, intestate,
leaving surviving her a number of children, the fruit
of the marriage, and with $1755 of the money received
from S. H. Durland unexpended and in her posses-
sion.   An administrator of her estate was duly ap-
pointed, after which S. H. Durland undertook, by
proceedings in the probate court, to establish his right
to the money Debbie Durland had left.   Defeated there,
he appealed to the district court.   Again he suffered
an adverse judgment, whereupon this proceeding in
error was commenced to reverse the judgment of the
district court.

S. H. Durland claims all the money Debbie Durland
left as his own, upon the theory that the title to it
would not change until the decree under which it was
paid became absolute by the expiration of the six
months' period fixed by the decree itself.   But in any
event he asserts title to one-half the money under the
statute of descents and distributions, as Debbie Dur-
land's surviving husband, upon the assumption that

the relation of husband and wife was not dissolved by the decree of divorce but continued to exist until Debbie Durland's death, because that decree had not then become absolute or taken effect.

The solution of the problem presented depends upon a proper interpretation of the provisions of the constitution and statutes of this state upon the subject of divorce. Under the territorial organic act extending the legislative power of the governor and legislative assembly to all rightful subjects of legislation, the legislature of the territory of Kansas passed many acts dissolving the bonds of matrimony between husbands and wives. According to the weight of judicial decision, the consensus of opinion among the members of the legal profession and the general legislative practice of the country such acts were valid as rightful exhibitions of legislative power. (*Maynard v. Hill*, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654.) When a constitution for the state was framed the power to grant divorces was taken away from the legislature and vested in the district courts, but the exercise of such power by the courts was expressly made subject to regulation by law.

"All power to grant divorces is vested in the district courts, subject to regulation by law." (Const. art. 2, § 18).

The word "regulation" is of broad signification, and in the absence of restrictive words the power granted must be regarded as plenary over the entire subject. The causes for which a divorce may be granted may be prescribed, and none other will suffice. Rules of procedure to be followed by the courts in granting relief for the causes named may be established, and no other course may be pursued. The rights, duties and obligations of the parties may be

fixed and their social status determined as a consequence of divorce, and so far as this is done it is conclusive. The period for which a breach of matrimonial duty must be endured before an action may be brought may be ordained. The conduct of the cause may be prolonged and the ultimate effect of the decree postponed. And since a judgment of divorce is, in the absence of some countervailing law, self-executing, the legislature may impose upon the judgment itself such limitations as shall effect a stay. What declarations then has the legislature made respecting the subject in review?

In the revision of the statutes made in 1868 the subject of divorce and alimony was given a place in the code of civil procedure, section 647 of which was as follows :

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other."

Such judgments were reviewable by proceedings in error commenced within three years under the general provisions of law, but no method of staying them was provided. In 1881, section 647 of the code of 1868 was amended to read as follows :

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other ; and no proceeding for reversing or vacating the judgment or decree divorcing said parties shall be commenced unless within six months after the rendition of said judgment or decree, and during said six months and the pendency of said proceeding for reversing or vacating said judgment

47—67 KAN.

or decree it shall be unlawful for either of. said parties to marry, and any person so marrying shall be deemed guilty of bigamy ; provided, such decree shall be final ; and no proceedings in error to the supreme court shall be allowed or taken unless a notice of an intention to prosecute such proceeding in error be given in open court and noted on the journal of the court, within three days after the entry of the decree or judgment, and the petition in error and transcript be filed in the supreme court within three months after the rendition of such judgment or decree." (Laws 1881, ch. 126, § 1.)

Section 2 of the same act reduced to one year the time within which proceedings for reversing judgments generally might be commenced. In 1889 the present law, purporting to amend section 647 of the code of 1868, was enacted, sections 6, 7, and 8 of which are as follows :

"SEC. 6. That section 647 of chapter 80 of the General Statutes of 1868 be amended so that the same shall read as follows : A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party. Every judgment of divorcement granted by the district court shall be final and conclusive, unless appealed from within the time and in the manner herein provided. A party desiring to appeal from a judgment.granting a divorce, must within ten days after such judgment is rendered file a written notice in the office of the clerk of such court, duly entitled in such action, stating that it is the intention of such party to appeal from such judgment ; and unless such notice be filed no appeal shall be had or taken in such cause ; if notice be filed as aforesaid, the party filing the same may commence proceedings in error for the reversal or modification of such judgment at any time within four months from the date of the decree

Durland v. Durland.

appealed from, and not thereafter; but whether a notice be filed as herein provided, or not, or whether proceedings in error be commenced as herein provided or not, it shall be unlawful for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; and if notice be filed and proceedings in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of thirty days from the day on which final judgment shall be rendered by the appellate court on such appeal; and every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage be absolutely void.

"Sec. 7. Every person convicted of bigamy, as such offense is defined in the foregoing section, shall be punished by imprisonment in the penitentiary for a term of not less than one year nor more than three years.

"Sec. 8. Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said time." (Laws 1889, ch. 107; Gen. Stat. 1901, §§ 5140–5142.)

This act is assailed as unconstitutional because it passed over the 1881 amendment of section 647 of the code of 1868, and again made the original section the basis of further legislation. This, however, may be done. (*Reynolds v. Board of Education*, 66 Kan. 672, 72 Pac. 274.)

What then is the meaning of this expression of legislative will? Blackstone's first rule with regard to the construction of statutes—to consider the old law, the mischief and the remedy, (1 Wend. Bla. Com. 87) has an especially satisfactory solvent effect upon the difficulties of this controversy.

Under the law of 1868 the pronunciation of the de-

Durland v. Durland.

cree ended the marriage relation, and left the parties free to form other alliances at once. If, however, at any time within three years either party should form a new and virtuous attachment the prospect of an advantageous marriage might be defeated through the litigiousness of the former spouse in commencing a proceeding in error. And if, within three years, an honest remarriage should take place, and the decree of divorce should afterward be reversed upon a much delayed and essentially vexatious proceeding in error, very distressing consequences would be certain to ensue. Besides this, the matrimonial relation was always subject to degradation through the proneness of unfaithful spouses to break it up for the purpose of an impetuous union with some intruder upon its sanctity. To meet these conditions the statute of 1881 was passed. Under it the divorce operated as a dissolution of the marriage contract as to both parties. The decree was final unless notice of an intention to prosecute error was given within three days; such proceeding in error was required to be commenced within six months, and the petition in error and transcript to be filed within three months; and during a period of six months from the rendition of the judgment, and as much longer as the proceeding in error remained pending, the parties were forbidden to remarry.

The prohibition upon marriage within six months, however, was the only limitation upon the judgment as an utter annihilation of the former marital status. If no appeal was taken the ties which had bound the individuals together were absolutely and unqualifiedly broken asunder. The parties were each as fully absolved from every marital right and duty and consesequence as they were before marriage, and were fully restored to the freedom they enjoyed before marriage

Durland v. Durland.

in every respect, except they could not marry for six
months.   Indeed, had the legislature withheld that
privilege forever, still no element of the relation of
husband and wife would have continued to exist.
That this construction of the law of 1881 is correct is
shown by the language of Chief Justice Horton in de-
ciding the case of *Baughman v. Baughman*, 32 Kan.
538, 543, 4 Pac. 1003, where it was said:

"Under the statute, a divorce granted at the in-
stance of one party operates as a dissolution of the
marriage contract as to both, and leaves them at lib-
erty to contract other marriages the same as though
the first had never subsisted.    (Laws of 1881, ch. 126,
§ 1;  1 Bishop on Marriage and Divorce, § 306.;  *Barber
v. Barber*;  16 Cal. 378.)    The decree of divorce in this
state is only encumbered with the statutory restriction,
that during the six months after the rendition of the
decree, and the pendency of the proceedings to reverse
the same, it is unlawful for either of the parties to
marry."

The law of 1889 returned to the same subject treated
by the law of 1881, and aside from protecting against
fraud resorted to by the successful party and improv-
ing details of procedure, dealt with the same evils,
namely, those attending a marriage immediately fol-
lowing a judgment of divorce.   Hence, the prohibi-
tion upon marriage in case of an appeal was extended
for a period of thirty days beyond final judgment in
the appellate court, a marriage within six months of
the decree was declared to be void as well as criminal,
and a specific penalty for such marriage was pre-
scribed.   These rigorous provisions plainly indicate
the mischief sought to be remedied, and the more so
because no reference whatever is made to the property
rights of the parties or to the disposition of children.
No intimation is to be found anywhere in the statute

that complications upon those subjects had arisen demanding any change of the law as to them. The only reason for holding in abeyance the operation of the judgment upon such matters would be to permit a subsequent modification of it as changed conditions might require, and no such purpose is indicated.

Since, however, one ignorant of the law might be misled by unqualified recitals in a divorce decree and be induced by them to yield to a relation believed to be marriage, but in fact utterly void, it was deemed proper that the decree itself should state the day and date of its rendition and express the restriction which the law imposes upon the privilege of the parties for the ensuing six months. A formula for doing this is prescribed by section 8, which relates to the duties of the clerk in making up the record.

Only one such restriction, however, is created. That is found in section 6, and obliges the parties to refrain from marriage. As to that matter the decree does not become absolute or take effect until six months shall elapse, but since the parties are repressed in respect to no other prerogative, every other result of a complete dissolution of the marriage follows at once.

That section 8 relates merely to the language in which the decree is to be couched instead of being an affirmative declaration that the decree shall have no effect during the six months immediately following its rendition is apparent from another consideration. If, by virtue of section 8, the decree did not dissolve the marriage, and the parties continued to be husband and wife for six months, a marriage by either of them with another person within that period would be unlawful and punishable as bigamy without any of the provisions of sections 6 and 7. The law of bigamy which they create would smack very much of "a fond thing

vainly invented," unless it should be construed to apply to divorced persons and not to those who are married.

These views are supported by the judgment of the supreme court of Oklahoma in the case of *In re Smith, Petitioner*, 2 Okla. 153, 37 Pac. 1099.

From this it must follow that S. H. Durland was not an heir of Debbie Durland after her decease, and that he is not, for any reason, entitled to the fund he claims.

The judgment of the district court is affirmed.

All the Justices concurring.