## CONKLIN v. UNITED STATES et al.

District Court, N. D. California, S. D. June 21, 1927.

No. 1465.

1. **Army and navy ⊜51½—Action to determine rights under war risk insurance contract may be legal or equitable (World War Veterans' Act, § 19, as amended by Act March 4, 1925, § 2 [Comp. St. § 9127½—19]).**

Actions to determine rights under war risk insurance contracts, authorized by World War Veterans' Act of June 7, 1924, § 19, as amended by Act March 4, 1925, § 2 (Comp. St. § 9127½—19), include an action at law or suit in equity, as may be appropriate.

2. **Army and navy ⊜51½—Wife of soldier named as beneficiary of his war risk insurance loses her right by obtaining divorce (War Risk Insurance Act, § 402, as amended by Act Aug. 9, 1921, § 23 [Comp. St. § 514uuu]; Rev. St. Kan. 60—1512, 60—1514).**

Where the wife of a soldier, prior to his death and prior to the amendment of War Risk Insurance Act, § 402, by Act Aug. 9, 1921, § 23 (Comp. St. § 514uuu), procured a decree of divorce under Rev. St. Kan. 60—1512, 60—1514, she thereby removed herself from the permitted class of beneficiaries capable of taking under his policy of war risk insurance and on his subsequent death, the insurance is payable to the person or persons within the permitted class to whom his personal property would descend, or reverts to his estate.

3. **Army and navy ⊜51½—Retroactive statute cannot revive status, as permitted beneficiary, of wife of insured who obtained divorce prior to its enactment (War Risk Insurance Act, § 402, as amended by Act Aug. 9, 1921, § 23 [Comp. St. § 514uuu]).**

War Risk Insurance Act, § 402, as amended by Act Aug. 9, 1921, § 23 (Comp. St. § 514uuu), by providing that the designated beneficiary in a policy of war risk insurance, if within the permitted class when designated, shall be deemed within the permitted class on the death of insured, though the status of such beneficiary shall have been changed, even though construed as retroactive, cannot revive the status, as a permitted beneficiary, of a wife who before its enactment procured a divorce.

4. **Statutes ⊜263—Reasonable doubts are resolved against retroactive operation of statutes.**

Every reasonable doubt must be resolved against the retroactive operation of a statute.

5. **Army and navy ⊜51½—Evidence held insufficient to warrant reformation of war risk insurance on ground of change of beneficiary (War Risk Insurance Act [Comp. St. § 514a et seq.]).**

In action by one claiming to be beneficiary of war risk insurance, under War Risk Insurance Act (Comp. St. § 514a et seq.), to reform contract of insurance on the ground of change of beneficiary, evidence, although tending to show execution of paper purporting to make change, *held* insufficient; mailing of paper not being proven, and receipt by Bureau of War Risk Insurance being disproven.

In Equity. Suit by Lottie C. Conklin, individually and as administratrix of the estate of George Heizman, deceased, against the United States and Sadie Mae Deavenport, formerly Sadie Mae Moore and Sadie Mae Heizman. Decree for complainant.

Alvin Gerlack, of San Francisco, Cal., for plaintiff.

George J. Hatfield, U. S. Atty., and C. M. Carpenter, Asst. U. S. Atty., both of San Francisco, Cal., for the United States.

Kenneth C. Gillis, of Oakland, Cal., for defendant Deavenport.

ST. SURE, District Judge. George Heizman, an enlisted man in the United States Army, took out a policy of war risk life insurance on May 6, 1918. In July of that year, while he was stationed at Camp Fremont, Cal., he married Sadie Mae Moore, now Deavenport, and she became his beneficiary. They lived together as husband and wife for about two months when Heizman left with his regiment for Siberia. The wife returned to her home in Kansas and never again saw her husband. Heizman returned from Siberia in October, 1919, suffering from a disease traceable to the extra hazard of the military service. He was treated at the gov-

ernment hospital at Palo Alto, and while there learned that his wife had divorced him in Kansas.

Phillip C. Blake, a soldier, occupied a bed in the hospital next to Heizman. Heizman was so sick he could not attend to himself, and Blake, not being bedridden, was able to and did perform many little services for his buddy. Naturally they became very friendly and exchanged confidences. Heizman discussed his marital troubles with Blake, told him his wife had divorced him, and that he desired to change the beneficiary in his life insurance policy to his sister. Blake called the matter to the attention of a Mr. Leland, described as a "Red Cross man at the hospital." Blake says the change of beneficiary was executed in his presence by Heizman. Leland took the paper away with a promise to mail it to Washington. No evidence is produced of its mailing, or its receipt by the Bureau of War Risk Insurance. The defendant was divorced from Heizman on October 7, 1920, and Heizman died 28 days later.

Following the death of her brother, plaintiff made claim to the Bureau of War Risk Insurance for payment of the insurance to her, basing her claim upon the ground that by obtaining a divorce defendant had removed herself from the permitted class of beneficiaries recognized by the War Risk Insurance Act, and that therefore plaintiff, as the sole surviving blood relative of the decedent, was entitled to succeed to her brother's estate as heir at law. The bureau denied the claim, sought and found the defendant, and notified plaintiff that "under regulations of the bureau the insurance applied for by the deceased soldier will be payable to his former wife, although she was divorced from him prior to his death." The bureau then commenced making payments under the policy to the defendant.

[1] Plaintiff brings this suit individually and as the administratrix of decedent's estate against the government and the former wife of decedent. Her bill contains two counts: First, seeking to declare and establish the right of plaintiff to the payment of the benefits under the policy of insurance and restraining the payment of the same to defendant; and, second, seeking to reform the contract of insurance to conform to the true intent and purpose of the insured, upon the theory that he had changed the beneficiary before his death. The issues are framed to afford equitable relief. The action against the United States, authorized by World War Veterans' Act 1924, § 19

(Comp. St. § 9127½—19), obviously includes any form of action, legal or equitable, appropriate to the facts in the case. Compare Elliott v. United States et al. (D. C.) 271 F. 1001.

[2] The first contention of plaintiff is that, when Mrs. Heizman (defendant Deavenport here) secured a divorce from her husband, she wholly removed herself from the permitted class of beneficiaries capable of taking the insurance under the act. The government agreed to insure the life of Heizman under the provisions of the War Risk Insurance Act then in force. See Act 1914, amended October 6, 1917, and June 25, 1918 (Comp. St. § 514a et seq.). The act provides, among other things, that the insurance "shall be payable only to a spouse." An amendment provides that, where no designated beneficiary is capable of receiving the insurance, it shall be paid to the estate of the insured decedent. When Heizman designated the defendant as his beneficiary, she was his spouse, within the permitted class only to whom insurance could be paid. On October 7, 1920, before Heizman's death, the defendant secured in Kansas, the state of her domicile, a decree of divorce, which was a complete dissolution of the marriage of herself and Heizman. Under the statutes of Kansas and the decisions of the courts of last resort of that state, this divorce decree became final and absolute upon its entry on October 7, 1920. See Revised Laws of Kansas 1923, 60—1512, 60—1514; Conn v. Conn, 2 Kan. App. 419, 42 P. 1006; Durland v. Durland, 67 Kan. 734, 74 P. 274, 63 L. R. A. 959.

Thus it will be seen that on October 7, 1920, defendant was no longer the spouse of Heizman. Through her own voluntary act, although preferred by law and designated by her former husband as his beneficiary, she waived her expectancy under the policy and withdrew from the permitted class. Heizman died on November 2, 1920. His life insurance became due because of his death, but he left him surviving no spouse to pay it to. The act says it shall be paid only to a spouse. Defendant of her own volition destroyed her status within the permitted class as a spouse, and became a divorced wife. Congress has not placed a divorced wife in the permitted class. As there was no person capable of receiving the benefits under the policy, the sister of the decedent on November 26, 1920, demanded of the government that she be paid the insurance as the sole surviving heir of decedent. This demand, as we have seen, was refused.

[3] On August 9, 1921, more than nine months after the death of Heizman, Congress passed an amendment to the act which reads as follows: "Where a beneficiary, at the time of designation by the insured is within the permitted class of beneficiaries, and is the designated beneficiary at the time of the maturity of the insurance because of the death of the insured, such beneficiary shall be deemed to be within the permitted class even though the status of such beneficiary shall have been changed." War Risk Insurance Act as amended August 9, 1921, c. 57, § 23 (Comp. St. § 514uuu).

It was upon its interpretation of this amendment that the Bureau of War Risk Insurance denied plaintiff's claim, and upon which defendant wholly relies to establish her right to receive payments under the policy. Defendant asserts that upon its passage this amendment became a part of the contract of insurance, and she then became entitled to the insurance due under the policy. It is further urged that, even though defendant Deavenport was not entitled to the insurance at the time of the death of her former husband, nevertheless she became entitled to it by the amendment, at least from the date thereof. To hold with defendant requires that the amendatory act of August 9, 1921, be given retroactive effect. It is significant that but two sections of this amendatory act are made retroactive (sections 18 and 26 [Comp. St. §§ 514qqq, 514vv8]) in express terms. The amendment above quoted has been re-enacted twice since its adoption (see Act June 7, 1924, and also Act March 4, 1925 [Comp. St. § 9127½—1 et seq.]), but in neither instance has it been made retroactive.

[4] Every reasonable doubt is resolved against a retroactive operation of a statute. 25 Ruling Case Law, p. 788. Even though the Legislature may have the power to enact retrospective laws, a construction which gives to a statute a retroactive operation is not favored, and such effect will not be given to it unless it is distinctly expressed, or clearly or necessarily implied, that the statute is to have a retroactive effect. 25 Ruling Case Law, p. 785. See, also, Reynolds v. McArthur, 2 Pet. 417, 7 L. Ed. 470, 476; City R. Co. v. Citizens' R. Co., 166 U. S. 557, 17 S. Ct. 653, 41 L. Ed. 1114; Cox v. Hart, 260 U. S. 427, 43 S. Ct. 154, 67 L. Ed. 332. The Circuit Court of Appeals of this circuit said in McDougald v. New York Life, 146 F. 674: "A statute is not retrospective in operation because a part of the requisites for its action

is drawn from another statute existing before the passage of the act in question." So it will be seen that there is grave doubt as to whether the amendment could be given retroactive effect. But, even so, in its retroactive aspect, the amendment, under the particular facts of this case, would have nothing to act upon. It is admitted that the defendant had no vested rights in the policy or its benefits. The most that she had was a contingent expectancy. Her expectancy depended upon three things: (1) That the policy be kept in force under the provisions of the act; (2) that the insured die; (3) that upon the death of the insured she be within the permitted class of beneficiaries.

Under the facts here presented it appears that her expectancy falls because of the failure of the third contingency. She was not the spouse of the decedent when the policy became due because of the death of the insured. Her expectancy, in that regard, was ended by her when she secured a divorce from the insured before his death. Her status as spouse was destroyed as completely as if she had died. Here was no technical change in status of a person named a beneficiary upon which the amendment might operate, but a total elimination of a person by her own volition from a permitted class as spouse, and the establishment of another status directly opposed to the permitted one and inferentially proscribed by the act, viz. that of divorced wife. When the defendant sought and procured a decree of divorce, her status as spouse passed with the marriage relation. It was dead beyond resurrection. From the views herein expressed it is apparent that this court believes that plaintiff is entitled to a decree as prayed for under her first cause of action.

[5] Plaintiff's contention relative to the second cause of action, wherein she seeks to reform the contract of insurance upon the ground that there was a change of beneficiary, is not supported by the evidence. While there is testimony of the execution of a paper purporting to change the beneficiary, the mailing of the paper was not proven, and its receipt by the Bureau of War Risk Insurance was disproven. See Leahy v. U. S. (C. C. A.) 15 F.(2d) 949.

A fee of 10 per centum of the amount recovered is allowed to plaintiff's attorney for his services.

Let decree be prepared in accordance with this opinion.