No. 36,368

In re Estate of Henry J. Troemper, Deceased. (PAUL G. TROEMPER et al., *Appellants,* v. NANNIE TROEMPER BARZ, *Appellee.*)

(163 P. 2d 379)

Opinion filed November 10, 1945.

*Ira C. Snyder,* of Manhattan, argued the cause for the appellants.

*Ladd J. Hubka,* of Beatrice, Neb., argued the cause, and *Raymond E. Smith, Gerald F. Smith,* both of Manhattan, and *Ernest A. Hubka,* of Beatrice, Neb., were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This controversy involves rights of inheritance in certain Kansas real estate. The answer to the ultimate issue turns principally upon the force and effect to be given to a decree of divorce which the appellee had received in the state of Nebraska.

Henry J. Troemper and Nannie Harding were married in Kansas in 1910, moved at once to Nebraska and lived there continuously as husband and wife until September 22, 1942. No children were born to them and they adopted none. On September 22, 1942, Nannie Troemper filed an action for divorce in the district court of Gage county, Nebraska, where they resided, and on the same day there was filed in the divorce action a written stipulation between the parties which—omitting formal portions—was as follows:

"It is stipulated by and between Nannie Troemper and Henry J. Troemper who are husband and wife as follows:

"In the event a divorce is granted to the plaintiff in her divorce action to be filed on this day it is stipulated by and between Nannie Troemper and Henry J. Troemper, that Henry J. Troemper will assign all his right title and interest in and to certificate No. 1320 for fifty shares of capital stock of the Lancaster Corporation which is now held jointly between them; that Nannie Troemper shall be entitled to all of the household goods of the parties and that all other property owned by the parties which is now of record in their own respective names shall remain and belong to said parties

individually and no claim shall be made thereon by either of the other parties.

"Henry J. Troemper further agrees to pay as alimony to Nannie Troemper the sum of $50.00 per month for a period of six months hereafter and no more. In addition, thereto, he shall pay to her attorneys, Hubka & Hubka, an attorneys' fee in the sum of $50.00 and all costs of the divorce proceeding.

"Dated at Beatrice, Nebraska, this 22nd day of September, 1942.

NANNIE TROEMPER

HENRY J. TROEMPER"

The defendant entered his voluntary appearance and acting under provisions of Nebraska law the court heard the case upon the same day the petition was filed and granted a divorce to the plaintiff. Material portions of the decree, entered on September 22, 1942, read as follows:

"The plaintiff was duly sworn and offered evidence in support of her petition. In consideration thereof the court finds that the plaintiff is entitled to a divorce from defendant upon the grounds as stated in her petition, the same however, *not to become absolute for a period of six months from this date. The court finds further in consideration of the stipulation on file with respect thereto,* signed by both of the parties that the said Henry J. Troemper shall assign all of his right, title and interest to Certificate No. 1320 for fifty shares of capital stock of Lancaster Corporation to the plaintiff and deliver the same to her, also that said plaintiff have alimony in the sum of $50 per month for a period of six months thereafter. The defendant shall be required to pay the costs of this proceeding.

"IT IS, THEREFORE, BY THE COURT CONSIDERED, ORDERED AND ADJUDGED, that the plaintiff and defendant be and they hereby are divorced, the same not to become final until six months hereafter; that the defendant shall assign all of his right, title and interest to Certificate No. 1320 for fifty shares of capital stock of Lancaster Corporation to the plaintiff and deliver the same to her, in addition thereto the plaintiff shall be entitled to all of the household goods of the parties. Said defendant shall pay to the plaintiff alimony in the sum of $50.00 per month for a period of six months from this date and further said defendant shall pay all court costs in this cause."

No question is raised as to the regularity of the divorce proceedings.

On October 15, 1942, twenty-three days after the divorce decree was entered Henry Troemper died intestate. In November, 1942, an administrator of his estate was appointed. Included in the inventory which he filed was the land involved in this action, being two hundred and forty acres in Wabaunsee county, Kansas. No question is raised as to the regularity of the administration proceedings which followed. Soon after Henry Troemper died Nannie Troemper remarried and became Nannie Barz. On May 10, 1943, Nannie

Barz filed in the estate proceedings in Nebraska a "Disclaimer, Release and Discharge of Plaintiff's Interest Provided in the Decree of Divorce." This instrument purported to have been signed on December 1, 1942.

Upon application of the administrator final settlement was had in the estate on June 10, 1943, at which time the county court of Gage county, Nebraska, found the heirs of Henry Troemper·to be "his widow, Nannie Troemper, now Nannie Barz, his sister, Mary Saffry, his brother Paul G. Troemper, and Herma Troemper and Wendell Troemper, the widow and son of his deceased brother, Edward Troemper." We are not here concerned with the disposition of the property made in Nebraska, except that it is pertinent to note that the corporate shares of stock of the Lancaster Corporation referred to in the property stipulation, *supra*, were not distributed, the court holding that they went to Nannie Barz by virtue of the fact that they were owned jointly by her and Henry Troemper. As to the land here involved the judgment of final settlement and distribution recited:

"9. The real estate belonging to the deceased, located in the state of Kansas, is not by this decree assigned, and must be assigned under and by virtue of the laws of inheritance of the state of Kansas."

On May 26, 1944, Nannie Barz filed in the probate court of Wabaunsee county, Kansas, a petition for administration of the estate of Henry Troemper, setting up her claim to the Wabaunsee county land as the widow of the deceased. The probate court found against her on August 7, holding that having been divorced from him she was not an heir of the deceased and had no interest in the land, and that the heirs were a surviving brother of the deceased, a surviving sister, and the widow and son of a deceased brother.

Appeal was taken by Nannie Barz to the district court. It is not necessary to narrate various procedural steps which followed, no question of their regularity being raised. The district court found for Nannie Barz and filed a memorandum opinion in which the legal questions here presented were fully and ably discussed.

From the journal entry of judgment we take the following:

"The court in consideration of the evidence and the written briefs filed by counsel in said cause finds generally in favor of the cross appellant, Nannie Troemper Barz; that the said Nannie Troemper Barz is the widow of Henry J. Troemper who died on the 15th day of October, 1942, a resident and inhabitant of Gage county, Nebraska, and that as such under the laws of

descent and distribution of the state of Kansas, there being no children born to the said Henry J. Troemper, all of the real estate possessed in the state of Kansas by the said Henry J. Troemper at the time of his death should be assigned to the widow, Nannie Troemper Barz, in fee simple."

Appeal to this court followed.

The primary question here is whether Nannie Troemper was the wife of Henry Troemper at the time of his death. Second, if she was his wife at that time, is she estopped by the property stipulation set out, *supra,* from claiming as his widow. Involved is the question of whether the issues here are to be determined under Kansas or under Nebraska law.

More narrowly stated, the first question is whether a Nebraska decree of divorce effects a dissolution of the marital status of the parties as of the date it is entered or is merely interlocutory in character, leaving the marital status undisturbed until the expiration of the six months' period provided for under the statute and in the decree.

It is unnecessary to set out in full the pertinent Nebraska and Kansas statutes relative to decrees of divorce. They are substantially similar. The Nebraska statute (R. S. of Neb., 1943, § 42-340) provides that "a decree of divorce shall not become final or operative until six months after trial and decision," etc. The Kansas statute (G. S. 1935, 60-1514) provides: "Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree of divorce does not become absolute and take effect until the expiration of six months from said time." Along with section 60-1514 of our statute should also be noted the provision of section 60-1512, G. S. 1935, that "it shall be unlawful for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement."

The Kansas and Nebraska courts have interpreted the respective statutes differently as to when the marital status is dissolved. We have held that under our statute the marital status is dissolved as of the date of the decree. (*Durland v. Durland,* 67 Kan. 734, 74 Pac. 274; *Cooper v. Bower,* 78 Kan. 156, 163, 96 Pac. 59; *Conway v. Conway,* 130 Kan. 848, 850, 288 Pac. 566.) The six months' period provided for in our law has been construed as merely a prohibition against remarriage of either party during that period. As to the effect of the provision upon marriage contracted outside

the state during the six months' period we are not here concerned. In Nebraska a contrary view has been reached. It is there held that no dissolution of the marital status takes place under a decree entered under the Nebraska law until the expiration of the six months' period. (*Holmberg v. Holmberg*, 106 Neb. 717, 184 N. W. 134.) In Nebraska the divorce proceedings are treated simply as a pending action during the six months following the entering of the decree.

It might possibly be argued that there is sufficient difference in the wording of the two statutes to explain divergent results reached in the interpretation. But we are not here concerned with that question. The general rule is that where the highest court of a state has determined the meaning of a statute of that state its interpretation is controlling. (59 C. J. 946; 21 C. J. S. 358; 50 Am. Jur. 316, 317; *Crooker v. Pearson*, 41 Kan. 410, 21 Pac. 270.)

It follows that in Nebraska where the parties were domiciled and where the divorce decree was entered the appellee was the wife of Henry Troemper at the time of his death. The general rule is that the status of a person and the relation in which he stands to other persons are determined by the law of the domicile and that such status will be recognized in every other state, at least insofar as such recognition is consistent with its own laws and public policy. (15 C. J. S. 916; 11 Am. Jur. 315.) Appellants do not question the Nebraska domicile of the parties at the time of the divorce nor do they attack validity of the Nebraska decree of divorce. Indeed, they base their contentions here upon the theory that a decree was lawfully entered under Nebraska law. They only reject the effect which the Nebraska courts give to the decree. They do not deny that in Nebraska, under Nebraska law, appellee was Henry Troemper's wife at the time of his death and therefore regarded as his widow for purposes of inheritance. They ask us to recognize that divorce proceedings were had in Nebraska but to apply Kansas law in determining the effect of the decree which was there entered. In this connection appellants urge that the full faith and credit provision of the constitution of the United States (Art. IV, § 1) is inapplicable here for the reason that no Nebraska court has made any finding regarding the marital status of the Troempers at the time of the death of the deceased; that that constitutional provision relates only to a judicial finding of an existing fact and not to construction of state statutes. We shall not pursue that subject at

length. In the first place, it is inaccurate to say that no Nebraska court has made any finding as to the status of appellee. In the administration of the estate in Nebraska the court determined who the heirs-at-law were, finding them to be the "widow, Nannie Troemper, now Nannie Barz," and the persons who are appellants here. In the next place, whether recognition of the fact that appellee was the wife of Henry Troemper be accorded under the principle of "full faith and credit" or under the principle of comity the same result is reached. Furthermore, when we give to the divorce proceedings in Nebraska the character and effect which the Nebraska court says they have under their divorce statutes we really have left no further question of "full faith and credit" or of comity. Appellee was married in Kansas and became a wife under our statutes. She continued to be so regarded in Nebraska. Her status of wife, created in Kansas, was never disturbed. Finally, we find no grounds of public policy which requires us to hold, in effect, that the Nebraska court has incorrectly construed the nature and effect of divorce actions under their statutes.

Appellants' second major contention is that even if it be held that appellee was the wife of Henry Troemper at the time of his death the property stipulation which was filed in the divorce action determined all her property rights, and that by virtue of its terms she is now estopped from asserting any right of inheritance in the Kansas land. The contention is not good, for two reasons. The first is that under the Nebraska statute as construed by the supreme court of that state a suit for divorce abates if either party dies before the expiration of the six months' period, is not subject to revivor, and property interests involved being merely incidental to the principal object are left as they were prior to the divorce proceedings. (*Williams v. Williams*, [Neb.] 19 N. W. 2d 630, and cases there cited.) It is true that in this case there was no provision in the decree specifically approving the property stipulation, but the stipulation was recognized in the decree, and the order as to the Lancaster Corporation stock was made "in consideration of the stipulation on file with respect thereto, signed by both of the parties." It is evident that the stipulation was conditioned upon the divorce being granted, and in view of the fact that under the Nebraska law a divorce proceeding is merely a pending action during the six months' period and that the whole proceeding abated upon the

death of Henry Troemper, the result was the same as if no decree had been entered.

Another answer to appellants' contention that by virtue of the property stipulation appellee is estopped from asserting right of inheritance is to be found in a rule of law clearly and correctly stated in the memorandum opinion of the trial court. It is well-established law that rights of inheritance are not denied to a surviving spouse except upon a clear showing that such rights had been renounced. Contracts relied upon to show such renunciation will not be so construed unless such intention unmistakably appears. (41 C. J. S. 578, 579; 30 C. J. 652, notes 56, 58; *Dennis v. Perkins*, 88 Kan. 428, 436, 129 Pac. 165 and cases there cited; *Bemarkt v. Prouty*, 132 Kan. 228, 294 Pac. 890.)

We agree with the trial court's conclusion that it cannot be said that such intention clearly appears. The stipulation makes no reference to rights of inheritance nor does it have any provision with reference to property rights except those conditioned upon dissolution of the marriage by divorce. There being no such dissolution we find nothing in the stipulation, even if it were to be considered still in effect, which constitutes estoppel as to rights of inheritance.

It is elementary that rights of inheritance in real estate are determined by the law of the situs. Under Kansas law, if a decedent leaves a spouse and no children nor issue of a previously deceased child all his property passes to the surviving spouse. (G. S. 1943 Supp. 59-504.) Our statute also specifically provides that "Real estate situated in this state, owned by an intestate decedent who is a nonresident of this state at the time of his death, shall pass by intestate succession in the same manner as though he were a resident of this state at the time of his death." (G. S. 1943 Supp. 59-503.)

Under these statutes and under the facts and conclusions stated Nannie Barz was the sole heir to the real estate in this state owned by Henry Troemper at the time of his death.

The judgment is affirmed.