JOHN HENRY KING, petitioner,

*v.*

MARY BENETA KLEMP, defendant.

[Decided December 22d, 1947.]

*Mr. David Silver,* for the petitioner.

*Mr. Frederick C. Vonhof,* for the defendant.

FRANCIS, A. M.

The petitioner here seeks an annulment of his marriage to the defendant. The ground on which the right to this relief is asserted is that at the time he and the defendant were married, the defendant had a husband then living from whom she was not divorced.

More specifically the petition alleges that a ceremonial marriage took place between the parties on November 22d, 1944, in Mt. Vernon in the State of New York. It further alleges that at this time defendant was already married to one Louis Adolph Klemp; that defendant had instituted an action for divorce against Klemp in the District Court of Leavenworth County, State of Kansas, and on August 22d, 1944, that court granted a decree of divorce which recited, among other things, that "the foregoing Decree of Divorcement does not become absolute and take effect until the expiration of six (6) months from this 22nd day of August, 1944." The allegation is then made that the marriage entered into just three months later was void.

The answer of the defendant asserts that at the time she contracted the marriage to petitioner under the law of the State of Kansas she was completely and absolutely divorced from her first husband, Klemp, and that in spite of the language of the decree she was free to marry King in the State of New York.

At the hearing there was no dispute about the facts. The petitioner, a resident of New Jersey, was inducted into the

Army and in 1944 was stationed in Fort Leavenworth, Kansas. There he met defendant, a resident of Kansas, and began to keep company with her although he knew that she was married and had two children. Her husband, Klemp, was in the Naval Service at the time and away from home.

On June 8th, 1944, King was transferred to Fort Hamilton, New York. From there he carried on a correspondence with defendant and in July, 1944, she came east to visit him. After a short visit, she returned to Kansas and came back to New York again in September, 1944. At this time she had with her the divorce decree referred to in the pleadings. An exemplified copy of the Kansas divorce proceedings, including the decree, was offered and received in evidence. The decree provides:

"It is therefore, now by the Court here considered, ordered, adjudged and decreed that the marriage contract heretofore existing between the plaintiff and the defendant be, and the same is hereby set aside, wholly annulled and that the parties be, and they are, hereby divorced from each other and forever released from the obligations of the marriage contract."

It further provides:

"It is further considered, ordered and adjudged by the court that the above and foregoing Decree of Divorcement does not become absolute and take effect until the expiration of six (6) months from this 22nd day of August, A. D. 1944."

According to petitioner, he made some inquiry of the defendant about the propriety of a remarriage before the termination of the six months period. She assured him that she was free to do so and that she had been so advised by her Kansas solicitor. His doubts were removed by these assurances and the marriage took place in Mount Vernon, New York, on the date indicated. They then took up their married life in New York State.

Thereafter, because of rumors and because of a visit paid to him by the defendant's first husband, Klemp, in March, 1945, he began to have doubts about the validity of his marriage. Then, following further discussion with his camp commander and his wife, he decided that the marriage was not valid and, in April, 1945, he sent her back to Kansas. This petition for annulment was filed on May 14th, 1945.

In order to establish the law of Kansas with respect to the effect of the divorce decree, an affidavit of Benjamin F. Enders, a member of the bar of Leavenworth County, Kansas, was offered in evidence. It was admitted, but at the request of counsel for petitioner, permission was given to argue the question of its admissibility in his memorandum to be submitted on the whole case.

The problem of proof of the laws of our sister states had been dealt with by statute. Section 2:98–28 of the New Jersey Revised Statutes, *N. J. S. A.* 2:98–28, provides:

"Whenever the common or statute law of any state, territory or other jurisdiction of the United States is pleaded in any action in any court of this State, the court shall take judicial notice thereof * * *."

Further *R. S.* 2:98–29; *N. J. S. A.* 2:98–29, says:

"The court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information."

Even if the precise question had not been presented to our courts, these legislative enactments would justify acceptance of the affidavit. However the Supreme Court has expressly sanctioned the practice. In *Franzen* v. *Equitable Life, &c., Society,* 130 *N. J. Law* 457; 32 *Atl. Rep.* (2d) 599, Mr. Justice Heher, speaking for the court, said.

"Error is assigned upon the admission in evidence, on respondent's motion, and over appellant's objection, of an *ex parte* affidavit made by a member of the bar of the State of Louisiana purporting to reproduce *verbatim* certain provisions of the revised Civil Code of that state, adopted in 1870, pertaining to the constitution of the contract of marriage, and passages from opinions rendered in two Louisiana cases not 'reported in the Southern reports' * * *."

After reference to the statutes above quoted, Mr. Justice Heher continued:

"Thus the introduction of the affidavit did not violate appellant's substantial rights. It did not embody the affiant's opinion of the law of Louisiana respecting the question at issue; it merely presented a transcript of pertinent provisions

of the Louisiana Civil Code, and made reference to two interpretative decisions, all of which were available to the court by the application of the statutory principle of judicial notice."

The affidavit here, as in the *Franzen Case,* quotes *verbatim* the sections of General Statutes of Kansas said to be pertinent and quotes also from an opinion of the Supreme Court of Kansas construing these sections. However paragraphs five and six thereof purport to give the opinion of the affiant as to the effect of the statutes and certain facts with respect to the record of the defendant's divorce action in that state. These paragraphs are no competent and will be disregarded in the determination of the cause.

According to the affidavit and an independent examination of the Kansas reports, section 60–1512 of the General Statutes of Kansas is as follows:

"60–1512. Effect of Decree of Divorce: Appeal, Notice: Remarriage Within Six Months Unlawful; Void and Bigamous. A divorce granted at the instance of one party shall operate *as a dissolution of the marriage contract* as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party. Every judgment of divorcement granted by a district court shall be final and conclusive, unless appealed from within the time and in the manner herein provided. * * *; or whether an appeal be commenced as herein provided, or not, *it shall be unlawful for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement;* * * * *and every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage shall be absolutely void.*"

Section 60–1514 of the same statutes reads:

"60–1514. Recital in Decree of Date Effective. Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and *that the decree does not become absolute and take effect until the expiration of six months from said time.*"

It was pursuant to this latter section of the statute, of course, that defendant's Kansas decree directed that it did "not become absolute and take effect until the expiration of six (6) months from this 22nd day of August, 1944."

Petitioner contends that by reason of this statutory mandate the defendant was possessed of a conditional divorce, that her marital status continued until February 22d, 1945, that she was not free to marry on November 22d, 1944, and that her marriage to him was therefore bigamous and "absolutely void." Defendant says (1) that her decree was an absolute divorce on the date of rendition, that the marital relation was destroyed thereby, that the seemingly qualifying language of the decree was simply a limitation on, or prohibition against, remarriage within the State of Kansas for the prescribed period, that the restriction had no extraterritorial effect and that therefore she was not barred from remarriage in New York State within that period; (2) that in any event petitioner is barred either by the doctrine of estoppel of or unclean hands from the relief he seeks.

If the decree in dispute had been issued by a New Jersey court there could be no doubt about its significance. A decree *nisi* here is a conditional divorce and the marital status remains in full legal vigor (*Dolan* v. *Wagner*, 95 *N. J. Eq.* 1; 125 *Atl. Rep.* 2) until the end of the three months period. The language of the Kansas statute and of the decree drawn in conformity with its requirements is certainly ambiguous and, unless an examination of the decisions of the Kansas courts interpreting the statute indicates otherwise, the impulse would be to declare the decree a conditional divorce. However where the construction of a foreign statute is involved, our courts will accept as controlling the interpretation placed thereon by the courts of that state. 2 *Sutherland—Statutory Construction*, § 4603.

Turning to the Kansas decisions, it appears that for more than forty years a decree such as was granted to the defendant has been considered as accomplishing a complete dissolution of the relation of husband and wife and of the rights and obligations associated therewith.

The statutory language that the decree "does not become absolute and take effect until the expiration of six (6) months," is not treated as a qualification on the destruction of the marital status, but simply as a limitation on the right to remarry. In *Durland* v. *Durland*, 67 *Kan.* 734; 74 *Pac.*

*Rep.* 274, which provides the source material for all subsequent interpretations of the statute, the Supreme Court said:

"The prohibition upon marriage within six months, however, was the only limitation upon the judgment as an utter annihilation of the former marital status. If no appeal were taken, the ties which had bound the individuals together were absolutely and unqualifiedly broken asunder. The parties were each as fully absolved from every marital right and duty and consequence as they were before marriage and were fully restored to the freedom they enjoyed before marriage in every respect, except that they could not marry for six months. Indeed had the legislature withheld that privilege forever still no element of the relation of husband and wife would have continued to exist." (74 *Pac. Rep.* 276.)

\*　　\*　　\*　　\*　　\*　　\*　　\*

"The decree of divorce in this state is only incumbered with the statutory restriction that during the six months after the rendition of the decree and the pendency of the proceedings to reverse the same, it is unlawful for either party to remarry." (74 *Pac. Rep.* 277.)

A short time after the *Durland Case,* the same court referring thereto said:

"In the case of *Durland* v. *Durland* this court had occasion to remark upon the object and purpose of this section, and there held, in substance, that it had but *one* object; and that was to prevent the divorced parties from remarrying within the prohibited term; that for all other purposes the decree would take present effect." *Phillips* v. *Phillips,* 69 *Kan.* 324; 76 *Pac. Rep.* 842.

In 1930 in *Conway* v. *Conway,* 130 *Kan.* 848; 288 *Pac. Rep.* 566, the following appears:

"When the divorce decree is granted the marital status is dissolved. We have no such thing as divorce *a mensa et thoro,* conditional divorce, suspension of marital relations and the like. Divorce ends marital relation and the judgment is final and conclusive."

This view has been reiterated a number of times in more recent years. In *Knollenberg* v. *Meyer* (1940), 151 *Kan.* 768; 100 *Pac. Rep.* 746, the court said:

"The statute provides that every decree of divorce shall recite that it does not become absolute and take effect until the expiration of six months from its date. This provision, however, has been interpreted as a mere restriction upon marriage within that time. Upon rendition of a decree of divorce, the parties cease to be husband and wife."

Again in 1945 the same doctrine was propounded:

"The Kansas and Nebraska courts have interpreted the respective statutes differently as to when the marital status is dissolved. We have held that under our statute the marital status is dissolved as of the date of the decree. The six month period provided for in our law has been construed as merely a prohibition against remarriage of either party during that period." *In re Troemper's Estate,* 160 *Kan.* 464; 163 *Pac. Rep.* (*2d*) 379.

As a result of this construction it has been declared that rights of inheritance are lost immediately by such a decree. *Durland* v. *Durland, supra; Jacobs* v. *Gaskill,* 69 *Kan.* 872; 77 *Pac. Rep.* 550; *Woolverton* v. *Johnson,* 69 *Kan.* 708; 77 *Pac. Rep.* 559, and that a divorced spouse is not a wife for insurance beneficiary purposes, even if the death occurs within six months. *Conklin* v. *United States,* 21 *Fed. Rep.* (*2d*) 141—*D. C. N. D. Cal.*

It is a well known principle that the validity of a marriage contract is to be determined according to the *lex loci contractus*. If it is valid there, with few exceptions, it is valid everywhere. These parties were married in the State of New York. No reference is made to the New York law in the pleadings. In the absence of such pleading the presumption must be indulged that the common law of New York is the same as that of New Jersey, *R. S.* 2:98–28; *N. J. S. A.* 2:98–28; *Kelly* v. *Kelly,* 134 *N. J. Eq.* 316; 35 *Atl. Rep.* (*2d*) 618, and the controversy will therefore be determined by the common law of our state.

The only charge levelled against this marriage is that the violation of the prohibition of the Kansas statute and decree makes it void. The problem, then, is whether the common law of New Jersey on principles of comity requires the enforcement of the limitation on remarriage imposed by this statute.

The Court of Errors and Appeals of New Jersey has not had the issue before it for determination. The only case in this state wherein the question was raised is *Marculies* v. *Marculies,* 55 *N. J. L. J.* 240, decided by Advisory Master Newman in 1932. It appeared there that the wife had obtained a decree of divorce in Virginia from her first husband. The decree forbade remarriage within six months thereafter. Four months later she married her second husband in New Jersey. Thereafter she sued the second husband here for divorce on the ground of extreme cruelty. In this proceeding the husband attacked the marriage as void because of the early remarriage in violation of the Virginia decree. The attack was rejected with this statement:

"The prohibition to remarry is generally considered as a penalty and as having no extraterritorial effect."

The same problem had been presented previously in the same case to Vice-Chancellor Church on an application for alimony *pendente lite.* He did not discuss it, but sustained the marriage without regard thereto because of the years of cohabitation between the parties after the impediment had been removed. *Margulies* v. *Margulies,* 109 *N. J. Eq.* 391; 157 *Atl. Rep.* 676.

While there is no authoritative expression of our common law as to the extraterritorial force of such a prohibition against remarriage, the great weight of authority throughout the country establishes the doctrine that the law of the forum will not enforce the prohibition.

The general rule is stated thus in 32 *A. L. R.* 1118:

"* * * It may be stated at this point that the majority of the cases in which the question has arisen have recognized and given effect to a marriage valid by the law of another state or country where it was celebrated, notwithstanding that one of the parties was at the time under an inhibition against remarriage imposed by a decree of divorce previously rendered in the state where the question arose, or by a statute of that state relating to divorce, or by both decree and statute, assuming that the provision in question did not have the effect to postpone the dissolution of the former marriage relation."

The statement on the same subject in the *Restatement of the Law—Conflict of Laws,* § 130, is informative:

"If, by a decree of divorce validly granted in one state, one party is forbidden for a certain time or during his life to marry again, and he goes into another state and remarries in accordance with the law of that state, the marriage, unless invalid for other reasons, is valid everywhere, even in the state in which the divorce is granted."

The *Comment* under this section is worth noting:

"A distinction is to be noted between this case and a case where a divorce is, by the law governing it, provisional only until the lapse of a certain time, or the common case of a decree *nisi*, or the so-called interlocutory decree, which does not become absolute until further proceedings or after the lapse of a certain time. In such a case, neither party ceases to be married until the lapse of the given time, and neither can marry again in any state, since such marriage would be bigamous."

5 *R. C. L.* 1004 is to the same effect:

"It is almost universally conceded that statutes prohibiting the guilty party to a judgment of divorce from marrying again, either for a certain period or while the other party to the former marriage lives, are without effect outside of the territorial limits of the prohibiting state. Since such a prohibition is in the nature of a penalty it does not apply to divorces granted outside of the state, nor does it carry any disability beyond the borders of the state where in force."

See, also, *Nelson—Divorce and Annulment,* § 20:07; 48 *Har. L. Rev.* 124; 44 *Har. L. Rev.* 501.

The implications of this type decree under the full faith and credit clause of the federal constitution were presented to the United States Supreme Court in *Loughran* v. *Loughran,* 292 *U. S.* 216; 54 *S. Ct.* 684. The court by Mr. Justice Brandeis disposed of the matter thus:

"The mere statutory prohibition by the state of the domicile either generally of the remarriage of a divorced person, or of remarriage within a prescribed period after the entry of the decree, is given only territorial effect. Such a statute does not invalidate a marriage solemnized in another state in conformity with the laws thereof."

In Massachusetts, whose common law principles have always borne a close affinity with our own, the same rule was adopted. In *Commonwealth* v. *Lane,* 113 *Mass.* 458, Chief-Justice Gray, speaking for the Supreme Court, said:

"A marriage which is prohibited here by statute because contrary to the policy of our laws, is yet valid if celebrated elsewhere according to the law of the place even if the parties are citizens and residents of this commonwealth and have gone abroad for the purpose of evading our laws, unless the legislature has clearly enacted that such marriages out of the state shall have no validity here."

Courts of sister states have passed upon the validity of a marriage contracted in their jurisdiction in violation of this very Kansas statute and of substantially similar laws of other states and have adjudged that the six months bar constitutes no impediment. *Bauer* v. *Abrahams,* 73 *Colo.* 509; 216 *Pac. Rep.* 259; *Wheelock* v. *Freiwald,* 22 *Fed. Rep.* (2d) 694 (*Eighth Cir.*); *Reger* v. *Reger,* 316 *Mo.* 1310; 293 *S. W. Rep.* 414; *Horton* v. *Horton,* 22 *Ariz.* 490; 198 *Pac. Rep.* 1105; *Fisch* v. *Fisch,* 1 *Wash.* (2d) 698; 97 *Pac. Rep.* (2d) 147; *Webster* v. *Modern Woodmen of America,* 192 *Iowa* 1376; 186 *N. W. Rep.* 659. However in Oklahoma, which has the same statute as Kansas, the opposite result was reached on the theory that the statute made the divorce decree a conditional one, that is, one which did not sever the marital status for the six months period. 12 *O. S.* 1941, §§ 1281 *et seq. Atkeson* v. *Woodmen of the World,* 90 *Okl.* 154; 216 *Pac. Rep.* 467.

The legislatures of some states, obviously disturbed by the deliberate frustration of the declared public policy against quick remarriage after divorce, or "progressive polygamy" as it has been called, adopted so-called evasion statutes. *Wisconsin Stats.* 1929, § 245:04; *Ill. Rev. Stat., ch.* 898, § 20; *La. Rev. Stat. Ann.,* §§ 4445, 4458; *Mass. Gen. Laws, ch.* 207, § 10–12; *Vt. Gen'l Laws,* § 3514; *W. Va. Code, ch.* 48, *art.* 1, § 27. Such statutes generally declare that if either of the contracting parties residing and intending to continue to reside in the state, goes into another jurisdiction with intent to evade the marriage laws of the domiciliary state, such marriage is void. But even here the invalidation is suffered only by residents of the statute enacting sovereign. If the marriage is valid in the jurisdiction of celebration and the parties acquire a residence there or elsewhere outside of the state of original domicil, no effort is made to declare it

void. *Atwood* v. *Atwood,* 297 *Mass.* 229; 8 *N. E. Rep.* (*2d*) 916.

It has been suggested that in the search for the true rule of the common law to be applied here, heed must be given on principles of comity to the declared public policy of the State of Kansas. Such an argument loses sight of a limitation on the application of rules of comity. If the public policy of the forum is stronger in its implications of service to the needs and interests of the community than is the good neighbor regard for the foreign policy, then the local policy will prevail. The public policy of New Jersey favors the institution of marriage and the preservation of the marital status. It frowns upon divorce and the destruction of the family group. In the execution of this policy our courts have laid down stringent proof requirements in cases of annulment of marriage for alleged bigamy. *Tyll* v. *Keller,* 94 *N. J. Eq.* 426; 120 *Atl. Rep.* 6.

In the present situation our policy of predicating the status of husband and wife on this New York marriage is more urgent than the recognition of the policy of Kansas against remarriage within six months of a divorce decree.

Upon a consideration of the whole subject, the conclusion seems to be required that under the common law of New Jersey the marriage of the petitioner and defendant is a valid one. This declaration of the validity of the marriage is not to be interpreted as a judicial pat on the back for willful evaders of proscriptions against remarriage appearing in foreign divorce decrees. It is not a sanction of such conduct. It is rather an impersonal recognition of the status produced by the marriage ceremony which recognition is made necessary by the needs of an orderly society. On the basis of the many cases appearing in the reports throughout the country, the precipitate haste to remarry seems to serve the purpose after the marriage of providing more leisure time for repentance than for marital bliss.

The view taken herein of the marriage of the parties renders unnecessary consideration of the application of the doctrine of unclean hands and estoppel.

Under the circumstances the petition for annulment will be dismissed.